The **HOMESTEAD GROUP, LLC.,**

v.

**BANK OF TENNESSEE.**

Court of Appeals of Tennessee, Eastern Section, at Knoxville.

Nov. 4, 2008 Session.

Feb. 26, 2009.

Permission to Appeal Denied by Supreme Court Oct. 5, 2009.

Mark A. Cowan, Morristown, Tennessee, for appellants.

William C. Argabrite and Mark S. Dessauer, Kingsport, Tennessee, for appellee.

## OPINION

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., J., and D. MICHAEL SWINEY, J., joined.

Plaintiff investor Group purchased a hotel from defendant Bank and after defaulting on the loan the Bank foreclosed and repurchased the hotel at the foreclosure sale. Plaintiff investor Group brought this action against the Bank based on intentional fraud and negligent misrepresentation and sought rescission and/or damages. The Trial Judge, after hearing evidence, ruled in favor of the Bank and dismissed plaintiff's action. Plaintiff appealed and we affirm the Judgment of the Trial Court.

## Background

Plaintiff/appellant The Homestead Group, LLC (the Group) bought a hotel (the Hotel) from defendant/appellee Bank of Tennessee (the Bank). The Group, which was formed to purchase and own the Hotel was comprised of six individual investors. Their complaint states that the Bank had foreclosed on the Hotel, then known as the Open Hearth Hotel (later renamed the Homestead House Hotel by the Group), on June 1, 2004 because the owners had defaulted on their loan and filed bankruptcy. The Bank was the successful bidder at the foreclosure sale. The Group acquired the Hotel from the Bank on September 1, 2004. The purchase price was $4.3 million, which the Bank financed, and the investors personally guaranteed the loan. The contract of sale contains a statement from the Bank wherein the Bank represented that it had no information about the profitability of the hotel other than information from the previous owner's bankruptcy case. During pre-sale discussions with the Bank's real estate agent, the Group was provided with an income statement that purported to show the Hotel's net sales for 2003 as $1,533,801.00 and the 2003 net profit as $443,760.00. Tony Howell, an officer of the Bank, however, informed members of the Group that the Bank did not have any reliable financial information on the Hotel. The Group alleged in its complaint that in January 2005 one of the investors discovered income information on the Hotel's computer that showed that the Hotel's 2003 net income was only $797,904.78. Later another investor found in the Hotel's office a March 2004 appraisal that valued the hotel at $3.9 million and showed a net

sales figure for 2003 of $803,637.00. The appraisal was addressed to the Bank and was performed at the request of the Bank.

The complaint alleged that the Bank's statements, actions and concealments, and those of its agent, were intentional fraud in inducing the Group and its members to buy the hotel and personally guarantee the purchase price. Alternatively, the complaint alleged a cause of action for negligent misrepresentation, and that the Bank, as seller and lender, breached its duty of good faith and fair dealing owed to plaintiff. Plaintiff sought rescission of the sale or, alternatively, compensatory damages, punitive damages, prejudgment interest and attorney's fees, court costs and discretionary costs.

The Bank filed an answer and counterclaim, which generally denied the allegation of the complaint and made specific reference to the "Disclaimer of Representations and Warranties" of the contract of sale that states that the Bank made "no representations or warranties of any kind or character regarding the Hotel, its profitability, its environmental condition or its past or future business. . . ." In its counterclaim, the Bank alleged that it sold the Hotel to the Group pursuant to the terms of the purchase agreement for a purchase price of $4.3 million and that the Bank provided financing for ninety percent of the purchase price. The loan was evidenced by a promissory note dated September 1, 2004 from the Group to the Bank and the note was secured by a Deed of Trust also dated September 1, 2004 that encumbered the Hotel and related property. The counterclaim asked that the Bank recover the deficiency on the Note from the Group and the additional counter-defendants, including the expenses incurred by the Bank, after a credit for the Bank's bid. The Group filed an answer to the counterclaim, and admitted in their answer

that "if the Court does not rescind the original sale for fraudulent concealment and fraudulent inducement, they will be liable for a reasonable deficiency."

## The Trial Court's Judgment

The Trial Court heard evidence on October 24 and 25, 2007 and, following the evidentiary hearing, made oral findings of fact and conclusions of law which were incorporated into the final judgment of January 23, 2008. The final judgment holds that the claims of plaintiff were not supported by the evidence and should be dismissed. The Trial Court found in the Bank's favor on its counterclaim and awarded the Bank $341,631.29 against the Homestead Group, Wayne Campbell, Russ Linger, Carol Linger, Ivan Cooper and Carole Cooper, jointly and severally. The Bank was ordered to supplement its claim for attorneys' fees within ten day of the judgment.

The Trial court first addressed the issue of punitive damages and stated that to award punitive damages there must be clear and convincing evidence that the Bank's actions were intentional, fraudulent, malicious and reckless to the extent that there is a gross deviation from a standard of care an ordinary person would exercise under the circumstances. The Court found the following facts applicable to the punitive damage issue: The Bank obtained ownership of a motel through foreclosure; the Bank retained Mr. Carroll, a realtor to sell the property. The Bank's contract with Mr. Carroll specifically stated that Carroll was not to make any representations about the Hotel because the information the Bank had was not reliable. Mr. Carroll met with some members of the Group about the sale of the Hotel and he related to the Group that he had information on the property from the Tibbetts [prior bankrupt owners of Hotel]

but he had to check with the Tibbetts before disclosing the information. Carroll represented that the Tibbetts did not want to provide their tax returns but Carroll did provide one thing, i.e., the Tibbetts' Income Statement, to the Group with the advice that "I believe you can rely on it if you want to." The Trial Court found Mr. Carroll to be a credible witness and noted that he was a salesman. The Trial Court stated that it was incredible to him that the plaintiffs relied on the fact that Carroll told them the Hotel was a money maker. The Trial Court concluded this was not a case for punitive damages. *See, Hodges v. S.C. Toof & Co.,* 833 S.W.2d 896 (Tenn. 1992).

Next, the Trial Court ruled on the Group's claims against the Bank and found the following facts were established by the evidence: Mr. Campbell[1] [sic] and Ms. Baldridge wanted to buy a motel real bad and they relied on the "income statement" presented to them by the realtor. As a result, they disregarded every other reasonable "thing you could think of." The Trial Judge remarked that there were a lot of accountants in this case, but even a non-accountant would know that it was a mistake to rely on the Tibbetts' income statement. Mr. Campbell [a CPA] stated that after seeing the income statement the Group would make an offer of $ 4.3 million "if the numbers panned out" and that they could confirm the numbers. Further, the Court found the Bank advised the Group that it had no other information on the Hotel's income, and noted that, although Baldridge was not credible, he had found information on the Hotel's computer that "confirmed what they say the case is about." The Court continued that the Group ignored the information on the computer and went ahead and bought the property. The Trial Court credited Howell's testimony, that he told the Group that any information the Bank had on the Hotel was not reliable and not credible. The Court also found, based on the testimony of Carr, an officer of the Bank, that the 2004 appraisal the Group claims was "hidden" from them by the Bank was for the Bank's internal use, that the Bank had sought a "distressed appraisal" and that the Bank was under no obligation to reveal the appraisal to the Group.

The Trial Court held that the Hotel was not run by the Group in the manner the Bank had intended it to be run, and based on the testimony of two employees of the Hotel, that the Hotel was not well run by the Group and the Hotel "just went down while they [the Group] were there." The Trial Court concluded that he could not find any fraud, misrepresentation or concealment on the part of the Bank and he ruled in favor of the Bank on this issue.

The Court stated that credibility of the witnesses was an important factor in reaching his decision, and found Carroll, the realtor, to be credible as well as both Bank officers, Howell and Carr, and also concluded that he did not find Mr. and Ms. Baldridge or Mr. Campbell credible witnesses. The Court entered orders granting the Bank's motion for discretionary costs in the amount of $4,928.05, and attorneys fees and out of pocket costs in the amount of $51,773.17. The Group filed a notice of appeal.

### The Appeal

The issues presented on appeal are:

A. Did the Trial Court err when it found in favor of the Bank and dismissed the Homestead Group's complaint in its entirety?

---

1. The Court inadvertently referred to Mr. Campbell, an investor in the Group, as Mr. Carroll, the realtor, throughout the memorandum opinion.

B. Did the Trial Court err when it granted the Bank's counterclaim and awarded the Bank a deficiency judgment in the amount of $351,353.01?

A trial court's findings of fact in a non-jury trial are reviewed *de novo* upon the record. The trial court is afforded a presumption of correctness unless the evidence preponderates otherwise. Tenn. R.App. P. 13(d); *Wright v. City of Knoxville,* 898 S.W.2d 177, 181 (Tenn.1995). This Court reviews credibility determinations made by the trial court with great deference. *Keaton v. Hancock County Bd. of Educ.,* 119 S.W.3d 218, 223 (Tenn. Ct.App.2003).

The trial court's conclusions of law are reviewed under a purely *de novo* standard with no presumption of correctness. *Taylor v. Fezell,* 158 S.W.3d 352, 357 (Tenn. 2005); *Union Carbide Corp. v. Huddleston,* 854 S.W.2d 87, 91 (Tenn.1993).

The Group's theories of recovery were based on the tort of intentional fraud in misrepresenting certain facts or concealing certain facts or, alternatively, negligent misrepresentation.

■ In order to sustain a cause of action for fraudulent misrepresentation, the plaintiff must show that: the defendant made a representation of an existing or past fact; the representation was false when made; the representation was in regard to a material fact; the false representation was made either knowingly or without belief in its truth or recklessly; plaintiff reasonably relied on the misrepresented material fact; and plaintiff suffered damage as a result of the misrepresentation. *Metropolitan Government of Nashville and Davidson County v. McKinney,* 852 S.W.2d 233, 237 (Tenn.Ct.App.1992)(citing *Graham v. First American National Bank,* 594 S.W.2d 723, 725 (Tenn.Ct.App.1979)). The party alleg-

ing fraudulent misrepresentation has the burden of proving every element of fraud. *Cox v. Hicks,* No. E2000–01141–COA–R3–CV, 2001 WL 881356 at *5 (Tenn.Ct.App. Aug. 7, 2001)(citing *Hiller v. Hailey,* 915 S.W.2d 800, 803 (Tenn.Ct.App.1995)). Fraud is never presumed, and where it is alleged facts sustaining it must be clearly made out. *Id.*

■ Liability for negligent misrepresentation will result: if defendant is acting in course of his business, profession, or employment, or in transaction in which he has pecuniary interest and if plaintiff establishes that the defendant supplied information to the plaintiff meant to guide others in their business transactions; the information was false; the defendant did not exercise reasonable care in obtaining or communicating the information; and the plaintiff justifiably relied on the information. *Walker v. Sunrise Pontiac–GMC Truck, Inc.,* 249 S.W.3d 301, 311 (Tenn. 2008).

■ As a general rule, a party may be found to be liable for damages caused by his failure to disclose material facts to the same extent that a party may be liable for damages caused by fraudulent or negligent misrepresentation. *Gray v. Boyle Inv. Co.,* 803 S.W.2d 678, 683 (Tenn.Ct. App.1990). A person who fails to disclose to another a fact that he knows may justifiably induce the other to act or refrain from acting in a business transaction is subject to the same liability to the other as though he had represented the nonexistence of the matter that he has failed to disclose. However to find such liability, there must also be a showing that the person accused of the concealment had a duty to the other to disclose the matter in question. *Macon County Livestock v. Kentucky State Bank,* 724 S.W.2d 343 (Tenn.Ct.App.1986). One party to a trans-

action usually has no duty to disclose material facts to the other. *Wright v. C & S Family Credit, Inc.*, No. 01A01–9709–CH–00470, 1998 WL 195954 at \*2 (Tenn.Ct. App. Apr. 24, 1998). However, Tennessee courts have identified three exceptions to this general rule and have held that a duty to disclose exists: where there is a previous definite fiduciary relationship between the parties; where it appears one or each of the parties to the contract expressly reposes a trust and confidence in the other; or where the contract or transaction is intrinsically fiduciary and calls for perfect good faith such as a contract of insurance which is an example of this last class. *Macon* at 349. Moreover, the courts have extended the duty of disclosure of material facts to real estate transactions under certain circumstances.

The relationship between the Bank and Group was that of seller and buyer of real property and creditor and debtor. The allegations of misrepresentation and concealment, however related only to the buyer/seller relationship. Our Supreme Court has held that a seller of real property has a duty to disclose "a fact of controlling importance in determining the desirability and value of that residence" that would not be apparent to the buyer through the exercise of ordinary diligence. *Simmons v. Evans*, 185 Tenn. 282, 206 S.W.2d 295, 296 (1947).

█ Generally, to find fraud by concealment or suppression of the truth there must be a showing of something more than mere silence, or a mere failure to disclose known facts. This Court has described the nature of fraudulent concealment as "[c]oncealment in this sense may consist in withholding information asked for, or in making use of some device to mislead, thus involving act and intention. The term generally infers that the person is in some way called upon to make a disclosure. It

may be said, therefore, that, in addition to a failure to disclose known facts, there must be some trick or contrivance intended to exclude suspicion and prevent inquiry, or else that there must be a legal or equitable duty resting on the party knowing such facts to disclose them." *Anderson v. Warren*, W2000–02649–COA–R3–CV, 2001 WL 1683810 at \*3 (Tenn.Ct. App. Dec. 12, 2001).

In the context of a claim of fraudulent or negligent misrepresentation a material fact has been defined as a reasonable person would attach importance to its existence or non-existence in determining a choice of action in the transaction in question; or the maker of the representation knows or has reason to know that its recipient regards or is likely to regard the matter as important in determining a choice of action, although a reasonable person would not so regard it. *Patel v. Bayliff*, 121 S.W.3d 347, 353 (Tenn.Ct.App.2003).

█ Justifiable reliance also is a necessary element in a cause of action based upon negligent or fraudulent misrepresentation. *McPherson v. Shea Ear Clinic*, 2007 WL 1237718 at \*10 (Tenn.Ct.App. 2007). A false representation alone does not amount to fraud; there must be a showing by plaintiff that the representation was relied on by him or her, and that the reliance was reasonable under the circumstances. *McPherson* at \*10. Justifiable reliance is not blind faith and there is no duty to disclose a fact if ordinary diligence would have revealed it. *Id.*

The Group's claims of fraudulent or negligent misrepresentation and concealment are solely related to two documents, the Income Statement and the March 2004 appraisal authored by Robert Fletcher. Plaintiffs have referred to this appraisal as the "hidden appraisal". The Income Statement was produced to the Group by the Bank's real estate agent, Mr. Carroll,

thus it falls under the category of an allegedly misrepresented fact. The appraisal was not produced to the Group by Mr. Carroll or Mr. Howell, it was discovered in the Hotel office in the fall of 2004, after the Group bought the Hotel. Accordingly, the appraisal can be considered as an allegedly concealed document.

The evidence established that the Income Statement was not prepared by the Bank or by an agent of the Bank. There was no evidence at trial that connected the Bank or Mr. Howell with the Income Statement. Carroll testified he obtained the Income Statement from Mr. Tibbetts and not from the Bank. He believed the Income Statement was prepared by Mr. Tibbetts' accountant but he did not know the identity of that accountant. Carroll testified that he believed the Income Statement could be relied on at the time he provided it to the Baldridges and Campbell. The Trial Court found that Carroll was a credible witness and that Campbell and the Baldridges were not. If the Baldridges and Campbell believed that the Income Statement was reliable at the July 28th meeting, this belief reasonably should have been dispelled the next day when they met with Howell. Howell testified that he specifically informed the Baldridges that the Bank had no reliable financial information on the Hotel while it was under the Tibbetts' ownership and that, in fact, he was aware of at least three pieces of conflicting financial information. He also informed the buyers that the Bank had two difference numbers for the Hotel's income under the Tibbetts and they were significantly different. The buyers were also aware that the Hotel had foundered under the Tibbetts ownership, that the Tibbetts had filed bankruptcy and that the Hotel had been foreclosed. Further Ms. Baldridge testified that she leaned from Howell at the July 29th meeting that Tibbetts' business practices were suspect and

based on those practices the computer generated document regarding income and expenses they had was not reliable. Again, the Trial Court found that Howell to be credible. Based on the information imparted to the Group regarding the Tibbetts bankruptcy and business practices and Howell's statements that the Bank had no reliable financial information the buyers were unreasonable on their continued reliance on the Income Statement once they met with Howell. Mr. Dickenson, the Bank's attorney, testified that he used bold face and capital letters for the disclaimer because he wanted to draw the buyers' attention to the fact that the Bank made no representations in connection with the sale of the Hotel, including its profitability or past and future business. Both Campbell and Baldridge were aware of the disclaimer in the contract of sale.

■ Based on the foregoing, the plaintiffs did not meet their burden of establishing the elements of fraudulent misrepresentation. The plaintiff had to establish that the Bank's representation of fact was false when made and that the fact was material. There is no dispute that the business' prior income was material to the decision to buy the Hotel. However, assuming that Carroll was acting as the Bank's agent when he produced the Income Statement to the buyers, the Group put on no evidence that the Income Statement was indeed false. All they could show was exactly what Howell told them before they signed the contract, that there was conflicting information on the Hotel's prior income from several sources. Plaintiffs offered no evidence to substantiate that the information in the Fletcher appraisal was true or that the data in the Income Statement was false.

The fourth element of the tort of fraudulent misrepresentation was also not proven

by the plaintiffs. Carroll claimed that he did not know that the Income Statement was false when he produced it to the buyers. The Trial Court believed Carroll's testimony. Moreover, his alleged misrepresentation was corrected within twenty-four hours and before the sale by Howell.

The buyers' claimed reliance on the Income Statement was unreasonable. Moreover, the actions of Baldridge and Campbell indicate they did not rely on the Income Statement despite their testimony to the contrary. When Ms. Baldridge prepared the business plan for the Hotel, her revenue projections were approximately 20% less that the revenue report in the Income Statement. Also, the business plan itself confirmed that the buyers were not relying on the Income Statement with the statement that "due to the inability to confirm prior financial history of the Open Hearth Hotel ..." Further, on cross examination, Mr. Campbell could not satisfactorily explain how he could have accepted several suspect aspects of the Income Statement, such as the fact that the expenses of the Hotel were all stated in numbers rounded to the nearest thousand dollars and that the amounts listed as the monthly and annual mortgage payments could not be reconciled. (Campbell has been a practicing CPA for several years). Other indications that the buyers did not rely on the Income Statement were Campbell's testimony that he only "briefly" looked at the Income Statement when it was given to him on July 28th and that he knew the income reported in the statement was based on 80% occupancy and a $60.00 a day room rate and that these figures had no substantiation. Further, the buyers' explanations of their understanding of the disclaimer in the contract of sale made no sense. Accordingly, the Trial Court's finding that the plaintiffs' claimed reliance on the Income Statement was not reasonable and

they did not meet their burden of proving the elements of fraudulent misrepresentation. The evidence does not preponderate against the Trial Court's finding. Tenn. R.App. P. 13(d).

■ Plaintiffs claim the Bank fraudulently concealed the Fletcher Appraisal and that the Group would never have bought the Hotel if they had seen the revenue figures reported in the appraisal. To hold the Bank liable under a theory of fraudulent concealment, the Group had to show that the Bank had a duty to the Group to disclose the matter in question. *Macon County Livestock Market*, 724 S.W.2d at 349. Generally one party to a transaction has no duty to disclose material facts to the other unless there is a showing of a previous definite fiduciary relationship between the parties, that the Group expressly reposed a trust and confidence in the Bank or that the transaction was intrinsically fiduciary. *Id.* 349–350. The Group did not set forth any evidence to support a finding of a fiduciary relationship between it as buyer and the Bank as seller. Moreover, the evidence presented would not support a finding that the Group expressly reposed a trust and confidence in the Bank. In order for a duty of disclosure to arise under this exception, the evidence must show that the Bank either knew or had reason to know that the Group was placing its trust and confidence in the Bank and was relying upon the Bank for counsel and information. *Id.* at 350. No such evidence was produced. Additionally, there was nothing about the contract of sale that was "intrinsically fiduciary". The question thus becomes whether the Bank had a duty to disclose the Fletcher Appraisal as "a fact of controlling importance in determining the desirability and value of that residence" that would not be apparent to the buyer through the exer-

cise of ordinary diligence. *Simmons* at 296.

The Group's brief relies heavily on this Court's opinion in *Consumer Financial Services (Management), Inc. v. Consumer Financial Services Management, L.L.C.,* No. M2003–02030–COA–R3–CV, 2005 WL 3369269 (Tenn.Ct.App. Dec. 9, 2005), a fraudulent inducement of a contract case that involved both misrepresentations and concealment on the part of a seller of a business. *Consumer Financial* at *1. Prior to the sale, a valuation of the seller's business was prepared by a company called the March Group. The valuation was not a formal appraisal and it was performed for the seller's benefit alone to assist in determining a sale price.

The facts in *Consumer Financial* are clearly distinguishable from the facts before the Court in the case at issue. In *Consumer Financial* the seller had operated the business and had to have been intimately knowledgeable about the company's finances including income, debts, the operations of the business and ongoing litigation. The *Consumer Financial* seller knew, as shown on the 1997 tax return, the true income of the business. In the case at issue, the Bank had operated the Hotel for only a month or so before the sale and did not have access to the particulars of the Tibbetts' businesses. The Bank did know that the Tibbetts could not service the debt and taxes on the Hotel, but that did not establish the Bank knew the income the Hotel produced. The testimony of the Bank's attorney, who was involved in the Tibbetts' bankruptcy, established that the Bank was aware that funds from the Hotel were commingled with the funds of their other businesses and that cash was allegedly removed from the Hotel without being recorded. The attorney testified that he had seen written documents representing the Hotel's income and expenses

but he was unable to substantiate any of this information. The Trial Court specifically stated that it believed Howell's testimony and accepted his testimony that the Bank did not have a reliable source of information to discern the true income of the Hotel. Accordingly, the rule set forth in *Simmons v. Evans,* that a seller generally has a duty to disclose material facts concerning the value of property that is known to the seller, and not reasonably discoverable by the buyer, does not apply here as the Bank did not know the true income of the Hotel under the Tibbetts' ownership.

■ Assuming *arguendo* that if the Bank knew the statement of the Hotel's income included in the Fletcher Appraisal was accurate, the Bank had no duty to produce the appraisal to the buyers as Tennessee courts consider the appraisal of real estate an opinion and, in general, an appraisal does not provide a basis for a fraudulent misrepresentation claim. *Davis v. McGuigan,* 2008 WL 4254150 at *5–6 (Tenn.Ct.App.2008). The policy behind this rule is that "value is largely a matter of judgement and estimation" about which people may differ. *Id.* This Court in *First Tennessee Bank Nat. Ass'n v. C.T. Resorts Co., Inc.,* 1997 WL 677945 at *3 (Tenn.App. Nov. 3, 1997) was asked to consider whether the failure to produce an appraisal of real estate by the seller was fraudulent concealment. The Court answered in the negative, reasoning that "concealment or nondisclosure of information is fraudulent only if there is an existing fact or condition, as distinguished from a mere opinion, to be disclosed, and when there is a duty to disclose upon the party having knowledge of such facts or condition." *Id.* (citing *Dozier v. Hawthorne Dev. Co.,* 37 Tenn.App. 279, 262 S.W.2d 705, 711 (Tenn.App.1953)). The Court observed that since an appraisal is merely a

statement or opinion of value, it is not a "fact or condition." We conclude that the March 2004 appraisal was merely Fletcher's opinion, and was not the type of fact or condition the Bank was under an obligation to disclose.

■■■ Finally, the Group argues that out of fairness the deficiency judgment awarded the Bank on its counterclaim should be offset by the difference between the amount the Bank paid for the Hotel at the 2005 foreclosure sale and the subsequent price it received at the 2006 sale of the Hotel. The Bank contends that this issue was not raised at trial and cannot be raised for the first time on appeal. In fact the issue was raised by the Trial Court at the end of the evidence at the time the Court issued its oral opinion and the Bank's attorney pointed out that the Group had not put on any evidence regarding this issue. A review of the record shows that the Group and the additional counter-defendants presented no evidence with respect to the validity of the Bank's claimed deficiency judgment that it sought by its counterclaim, nor did the Group present evidence to show that the amount of the deficiency should be offset by the difference between the sale price at the December 2005 sale and the April 2006 sale. Moreover, the Group and the additional counter-defendants admitted in the answer to the Bank's counterclaim that "if the Court does not rescind the original sale for fraudulent concealment and fraudulent inducement [the Group] will be liable for a reasonable deficiency." We conclude the Trial Court's award to the Bank of $341,631.29, the deficiency between the foreclosure sale price and the note plus attorneys fees and costs, was appropriate, and we affirm the Trial Court on this issue. *See Lost Mountain Dev. Co. v. King,* 2006 WL 3740791 at *4 (Tenn.Ct. App. Dec. 19, 2006).

We affirm the Trial Court's Judgment in dismissing plaintiff's suit against the Bank and the Trial Court's award of deficiency damages to the Bank.

The cause is remanded with the cost of the appeal assessed to the appellants.