IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
January 19, 2022 Session

**HOPE KING V. STEPHEN BRADLEY**

**Appeal from the Chancery Court for Knox County**
**No. 198393-2     Michael W. Moyers, Chancellor**

_____

**No. E2021-00261-COA-R3-CV**
_____

In this negligent misrepresentation case, an insured alleges that her insurance agent made misrepresentations about the contents of an agreement she authorized her husband to sign on her behalf. The trial court granted summary judgment in favor of the insurance agent, finding that the insured was "responsible for what she signs or what she has her agent to sign." Discerning no error, we affirm the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which JOHN W. MCCLARTY and KRISTI M. DAVIS, JJ., joined.

Bryan L. Capps and R. Joshua McKee, Knoxville, Tennessee, for the appellant, Hope King.

Steven Warren Keyt, Chattanooga, Tennessee, for the appellee, Stephen Bradley.

**OPINION**

Rutledge Pike Electric ("Rutledge Pike") was a commercial electrical contractor owned and operated by Garry King ("Mr. King") and Joshua King; Hope King is Mr. King's wife and Joshua King's step-mother. Rutledge Pike desired to work on a large commercial project in Jacksonville, Florida and was required to obtain performance and payment bonds as a condition of performing the work. Stephen Bradley, an insurance agent with Bradley Insurance Agency, worked with Rutledge Pike to procure the bonds from SureTec Insurance Company ("SureTec"). In order to finalize the bonds, Garry, Joshua, and Hope King were required to sign a General Agreement of Indemnity ("GAI"). The GAI was secured by Garry and Hope King's personal assets. Specifically, the contract states, in paragraph 9:

As further security, the Indemnitors hereby grant the Company a security interest in, and lien on, all of their furniture, fixtures, equipment, office equipment, books and records, documents, accounts, deposit accounts, investment property, . . . real property . . . . This Agreement shall constitute a Security Agreement and a Financing Statement for the benefit of the Company in accordance with the Uniform Commercial Code and all similar statutes and a deed of trust or mortgage, as applicable, and may be filed by the Company without notice to perfect the security interests and liens granted herein.

The final paragraph of the GAI emphasizes:

THE UNDERSIGNED INDEMNITORS REPRESENT TO THE COMPANY THAT THEY HAVE CAREFULLY READ THIS ENTIRE AGREEMENT CONSISTING OF THIS PAGE, THE PRECEDING PAGES, AND ANY PAGES WHICH FOLLOW, AND THAT THERE ARE NO OTHER PROMISES, AGREEMENTS OR UNDERSTANDINGS WHICH IN ANY WAY LESSEN OR MODIFY THE OBLIGATIONS SET FORTH HEREIN. THE UNDERSIGNED INDEMNITORS RECOGNIZE THAT THE ABOVE AND FOREGOING AGREEMENTS INCLUDE BROAD RIGHTS IN FAVOR OF COMPANY AND LIMITATIONS ON THE LIABILITY OF THE COMPANY AND ITS AGENTS FOR CERTAIN ACTS AND OMISSIONS, INCLUDING NEGLIGENT ACTS AND OMISSIONS. . . .

(Capitalization in original). On the final signature page of the GAI there were four signature lines; one was labeled "LLC" and the other three were labeled "Individual." Garry King's signature appears on the line for "LLC," and Garry, Hope, and Joshua King's signatures appear on the three signature lines labeled "Individual."

According to Mr. King's version of the events, on April 1, 2015, he and Joshua King met with Mr. Bradley in person to execute the documents necessary to obtain the bonds, including the GAI. During the course of the meeting, while Mr. Bradley was present, Mr. King called Hope King and obtained her permission to sign her name on the GAI. Mr. King testified that Ms. King said, "Garry I don't care what you sign as long as we're not putting up our personal stuff, I don't care." Mr. King then asked Mr. Bradley, "Are you sure we're not putting up our stuff?" Mr. Bradley responded, "Nope. Just [Rutledge Pike]."[1] Relying upon this statement, Mr. King signed the GAI on behalf of Rutledge Pike,

---

[1] In contrast to Mr. and Ms. King's version of events, Mr. Bradley stated in his deposition and in response to Ms. King's statement of undisputed facts as follows:

On April 1, 2015, Garry King told Stephen Bradley that Hope King was in an office down the hall and th[at] he (Garry King), would go down the hall and have Hope King sign the

himself, and Ms. King. Mr. King did not attempt to read the contract. Subsequently, Rutledge Pike was unable to complete the commercial project. SureTec then enforced its contract with the Kings and began taking possession of Mr. and Ms. King's various properties pursuant to the terms of the GAI.

On January 18, 2017, Ms. King filed a complaint for declaratory judgment against Mr. Bradley and Holly Stobie, the notary who notarized the signatures on the GAI. On December 18, 2018, Ms. King voluntarily dismissed Mr. Bradley from the case; the case against Ms. Stobie remained. On July 10, 2019, Ms. King re-filed her suit against Mr. Bradley, alleging negligent misrepresentation. In Paragraphs 33 and 34 of her complaint, Ms. King summarized her allegations against Mr. Bradley as follows:

> 33. . . . Plaintiff Hope King alleges that Defendant Bradley was negligent in creating, acquiring, reviewing, supplying and representing the contents of the subject General Agreement of Indemnity. More specifically, despite Defendant Bradley's long-standing relationship with Garry and Hope King; his knowledge of and placement of insurance for their substantial personal real estate holdings; and his specific knowledge of the requested protection of the Kings' personal real estate holdings and other assets – Defendant Bradley hurriedly, intentionally and/or negligently created, acquired, reviewed, presented and improperly represented to Garry and Hope King that the General Agreement of Indemnity did not and would not encumber or otherwise expose their personal real estate o[r] other assets.

> 34. Plaintiff Hope King specifically relied on Defendant Bradley's actions and representations concerning the General Agreement of Indemnity, and she did so to her detriment. . . .

> 38. Plaintiff alleges that she authorized her unnotarized signature to be affixed to the [GAI] based solely on the misrepresentations of Defendant Bradley concerning its contents and effects on her personal assets or in the alternative based on a clear mistake of fact as the surety/collateral conveyed by the document.

On September 25, 2019, Mr. Bradley filed a motion to dismiss. On January 23, 2020, Mr. Bradley filed a motion to consolidate the case with the cause of action pending against Ms. Stobie. On March 4, 2020, the court entered an order transferring the case against Mr. Bradley to the chancellor handling the case against Ms. Stobie; however, the

---

Indemnity Agreement, have it notarized, and bring it back to Mr. Bradley. . . . Each time an Indemnity Agreement was executed for bonds issued for [Rutledge Pike], Stephen Bradley explained to the Kings that their personal assets were at risk if the bonding company was forced to make a payment.

chancellor did not consolidate the cases at that time. On July 10, 2020, Ms. King responded to Mr. Bradley's motion to dismiss.[2] On August 5, 2020, Mr. Bradley answered the complaint and filed a motion for summary judgment. In support of his motion for summary judgment, Mr. Bradley relied upon 1) the deposition of Ms. King; 2) a GAI Ms. King executed in 2012; 3) the GAI executed in April 2015; and 4) a statement of undisputed material facts. Ms. King responded to the motion for summary judgment on September 22, 2020, and submitted her own statement of undisputed material facts and an affidavit of Joshua Witt, a licensed insurance agent. Mr. Witt stated in his affidavit that, *inter alia*:

> [I]t is my opinion, within a reasonable degree of certainty as a licensed agent and broker, that the actions of Stephen Bradley were negligent and fell below the standard of care for insurance agents and brokers in the Knoxville and surrounding communities engaged in the acquisition and/or sale of payment and performance bonds with related indemnity agreements.

On October 1, 2020, the trial court entered an order consolidating Ms. King's case against Mr. Bradley with the previously-filed case against Ms. Stobie. Ultimately, the trial court granted summary judgment in favor of Mr. Bradley. The court incorporated the hearing transcript into its order, which reflected its oral ruling as follows:

> Well, you know, I may -- I may be wrong and if the Court feels I'm wrong, tells me I'm wrong, it's not going to hurt my feelings a bit, but I just can't get past the fact that Ms. King was advised by her husband, who had the document in front of him, who signed acknowledging that he had read and understood the document. He was made Ms. King's agent based on his representations through her. If his reliance on whatever Mr. Bradley said or didn't say is not reasonable, I think it's not under the law. Then hers can't be either. I think she's -- in making her husband her agent, she is charged with knowledge that he's charged with and I just don't see how it can be different. So respectfully I'm going to grant the motion for summary judgment. I don't think that there's a material issue of fact here and I think the law requires that she is responsible for what she signs or what she authorizes her agent to sign. She had the opportunity to come look at it. They both had the opportunity to take it to counsel to have it explained to them. And if I'm wrong, I'm wrong. As I say, I will probably be pleased to be wrong, but I think that's what the law compels me to find today. So I will grant the motion for summary judgment . . .

On December 7, 2020, Ms. King filed a motion to alter or amend the order granting summary judgment, asserting that the court's order on summary judgment was "erroneous in that the [c]ourt ruled based on a theory and argument never raised by the [d]efendant in

---

[2] The record contains no order on Mr. Bradley's motion to dismiss.

- 4 -

his filings and based upon facts that the [d]efendant never intended to rely upon in his motion." Ms. King also argued that the court erred in not considering Mr. Witt's affidavit. The trial court denied Ms. King's motion to alter or amend by order entered February 4, 2021, and dismissed the consolidated action against Ms. Stobie based on Ms. King's request for a voluntary nonsuit. Ms. King filed a notice of appeal on March 5, 2021.

Ms. King raises three issues for our consideration: 1) whether the trial court erred by granting summary judgment based on facts not raised in Mr. Bradley's motion for summary judgment; 2) whether a genuine issue of material fact remained as to whether Ms. King's reliance on Mr. Bradley's misrepresentations was reasonable; and 3) whether genuine issues of material fact remained regarding Ms. King's claim for agent and/or broker negligence by Stephen Bradley. Mr. Bradley raises two issues: 1) whether the notice of appeal was timely filed and 2) whether the parol evidence rule bars evidence of Mr. Bradley's alleged misrepresentations.

STANDARD OF REVIEW

This appeal arises from the grant of summary judgment by the trial court. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." TENN. R. CIV. P. 56.04. A disputed fact is material if it is determinative of the claim or defense at issue in the motion. *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 84 (Tenn. 2008) (citing *Byrd v. Hall*, 847 S.W.2d 208, 215 (Tenn. 1993)).

In this case, the party moving for summary judgment does not bear the burden of proof at trial. Thus, the burden of production could be satisfied by either "affirmatively negating an essential element of the nonmoving party's claim" or by "demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense." *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 264 (Tenn. 2015). Satisfying this burden requires more than a "conclusory assertion that summary judgment is appropriate"; the moving party must set forth specific material facts as to which the movant contends there is no dispute. *Id.* Once the moving party has satisfied this requirement, the nonmoving party "'may not rest upon the mere allegations or denials of [its] pleading.'" *Id.* at 265 (quoting TENN. R. CIV. P. 56.06). Rather, the nonmoving party must respond and produce affidavits, depositions, responses to interrogatories, or other discovery materials that "set forth specific facts showing that there is a genuine issue for trial." TENN. R. CIV. P. 56.06; *see also Rye*, 477 S.W.3d at 265. If the nonmoving party fails to respond in this way, "summary judgment, if appropriate, shall be entered against the [nonmoving] party." TENN. R. CIV. P. 56.06. "Because the party moving for summary judgment bears the burden of proof, we view the evidence in favor of the non-moving party by resolving all reasonable inferences in its favor and discarding all countervailing evidence." *Vanquish Worldwide, LLC v. Sentinel*

*Ins. Co., Ltd.*, No. E2020-01650-COA-R3-CV, 2022 WL 189791, at *2 (Tenn. Ct. App. Jan. 21, 2022) (citing *Parker v. Holiday Hosp. Franchising, Inc.*, 446 S.W.3d 341, 346-47 (Tenn. 2014)).

We review a trial court's summary judgment determination de novo, with no presumption of correctness. *Rye*, 477 S.W.3d at 250. This means that we must review the record de novo and "make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied." *Id.*; *Jenkins v. Big City Remodeling*, 515 S.W.3d 843, 847 (Tenn. 2017).

ANALYSIS

I.      Timeliness of the Appeal

As an initial matter, we address Mr. Bradley's argument that Ms. King's appeal should be dismissed as untimely. Rule 4 of the Tennessee Rules of Appellate Procedure provides the time limit for filing a notice of appeal to this Court: "In an appeal as of right to the . . . Court of Appeals . . . the notice of appeal required by Rule 3 shall be filed with the clerk of the appellate court within 30 days after the date of entry of the judgment appealed from." TENN. R. APP. P. 4(a). The thirty-day time limit is "mandatory and jurisdictional" in civil matters. *Albert v. Frye*, 145 S.W.3d 526, 528 (Tenn. 2004). However, the time for filing a notice of appeal may be tolled by the timely filing of certain post-judgment motions. *See* TENN. R. APP. P. 4(b); TENN. R. CIV. P. 59.01. For example, a Tenn. R. Civ. P. 59.04 motion to alter or amend the judgment will "extend[] the time for taking steps in the regular appellate process." TENN. R. CIV. P. 59.01.

Mr. Bradley argues that the thirty-day time limit for filing a notice of appeal was not tolled by Ms. King's filing of a motion to alter or amend because her motion simply sought to "relitigate matters that ha[d] already been adjudicated" and was not a proper motion under Tenn. R. Civ. P. 59.04. However, Mr. Bradley did not advance this argument in his response to Ms. King's motion to alter or amend, and he points to no place in the record in which he argued to the trial court that Ms. King's motion did not comport with Tenn. R. Civ. P. 59.04. Issues that are not raised in the trial court may be deemed waived on appeal. *See* TENN. R. APP. P. 36(a); *Watson v. Watson*, 309 S.W.3d 483, 497 (Tenn. Ct. App. 2009). Under these circumstances, we find that Mr. Bradley has waived any argument attacking the propriety of Ms. King's motion to alter or amend. The trial court entered its order granting summary judgment on November 5, 2020. Ms. King filed a motion to alter or amend on December 7, 2020. Under Tenn. R. Civ. P. 59.01, Ms. King's motion to alter or amend tolled the thirty-day time limit for filing a notice of appeal until the trial court denied her motion to alter or amend on February 4, 2021. Because Ms. King's notice of appeal, filed on March 5, 2021, was filed within thirty days after the court ruled on her motion to alter or amend, her appeal was timely filed. *See* TENN. R. APP. P. 4(b); TENN. R. CIV. P. 59.01. We move on to address the merits of Ms. King's appeal.

II.     Negligent Misrepresentation

The gravamen of Ms. King's claim against Mr. Bradley is one for negligent misrepresentation. To state a claim for negligent misrepresentation, a plaintiff must prove that:

> (1) the defendant was acting in the course of his business, employment, or a transaction in which he has a pecuniary interest; (2) the defendant supplied information meant to guide others in their business decisions; (3) the information that the defendant supplied was false; (4) the defendant did not exercise reasonable care in obtaining or communicating the information; and (5) the plaintiff justifiably relied on the information.

*Vanquish Worldwide, LLC*, 2022 WL 189791, at *3 (citing *Homestead Grp., LLC v. Bank of Tenn.*, 307 S.W.3d 746, 751 (Tenn. Ct. App. 2009)). At the summary judgment stage, the resolution of this dispute turns on the fifth element: whether Ms. King's reliance (or her husband's reliance as her agent) on Mr. Bradley's statements[3] regarding the GAI was reasonable.[4]

Justifiable reliance is an essential component of a cause of action for negligent misrepresentation, and until the justifiable reliance element is established, there is no negligent misrepresentation. *Homestead Grp., LLC*, 307 S.W.3d at 752; *McNeil v. Nofal*, 185 S.W.3d 402, 409 (Tenn. Ct. App. 2005). Indeed, "[a] false representation alone does not amount to fraud; there must be a showing by plaintiff that the representation was relied on by him or her, and that the reliance was reasonable under the circumstances." *Homestead Grp., LLC*, 307 S.W.3d at 752. This Court has explained that justifiable

---

[3] We pause to address Mr. Bradley's argument that his alleged statements about the GAI should be considered parol evidence and therefore inadmissible. We disagree. This Court has previously held that the parol evidence rule "has no application to a case involving a fraudulent misrepresentation which induces the contract." *Brungard v. Caprice Records, Inc.*, 608 S.W.2d 585, 588 (Tenn. Ct. App. 1980) (quoting *Haynes v. Cumberland Builders, Inc.*, 546 S.W.2d 228, 231 (Tenn. Ct. App. 1977)); *see also Stamp v. Honest Abe Log Homes, Inc.*, 804 S.W.2d 455, 458 (Tenn. Ct. App. 1990) (determining that a claim for misrepresentation "sounded in tort" rather than contract, and therefore the parol evidence rule should have no application); *Butler v. Butler*, No. W2007-01257-COA-R3-CV, 2008 WL 5396019, at *6 (Tenn. Ct. App. Dec. 23, 2008) (noting that the "parol evidence rule does not apply to claims of fraudulent misrepresentation in inducement of a contract" and allowing parol evidence of fraudulent misrepresentation in a case against an attorney).

[4] Ms. King argues that the trial court erred in "determining *sua sponte* that [Ms.] King could not have reasonably relied on any representations made by—Garry King—during the April 1, 2015 phone call." Respectfully, the element of justifiable reliance is an essential piece of Ms. King's cause of action for negligent misrepresentation, and Mr. Bradley fairly raised it (although perhaps inartfully argued it) in his briefing, particularly his reply brief in support of his motion for summary judgment. Ms. King's argument that the trial court was wrong to consider justifiable reliance, an essential element of her cause of action, is without merit.

reliance "is not blind faith." *Id.*; *McNeil*, 185 S.W.3d at 408. Instead, where plaintiffs have access and opportunity to discover the truth with respect to the misrepresented issue and have failed to inform themselves of the truth, "they must abide the consequences of their own inattention and carelessness." *McNeil*, 185 S.W.3d at 409 (quoting *Pakrul v. Barnes*, 631 S.W.2d 436, 438 (Tenn. Ct. App. 1981)). This Court has previously cited and given approval to the following guiding principles in the context of justifiable reliance:

> "[I]t is commonly held, in the absence of special circumstances, that, where the means of knowledge are readily available, and the vendor or purchaser, as the case may be, has the opportunity by investigation or inspection to discover the truth with respect to matters concealed or misrepresented, without prevention or hindrance by the other party, of which opportunity he is or should be aware, and where he nevertheless fails to exercise that opportunity and to discover the truth, he cannot thereafter assail the validity of the contract for fraud, misrepresentation or concealment with respect to matters which should have been ascertained, particularly where the sources of information are furnished and attention directed to them, as, for example, where the source of accurate information is indicated or referred to in the contract."

*Id.* at 409-10 (quoting *Pakrul*, 631 S.W.2d at 438). Generally, "a party dealing on equal terms with another is not justified in relying upon representations where the means of knowledge are readily within its reach." *Annaco, Inc. v. Corbin*, No. 02A01-9804-CH-00111, 1998 WL 929637, at *5 (Tenn. Ct. App. Dec. 31, 1998) (citing *Solomon v. First Am. Nat'l Bank*, 774 S.W.2d 935, 943 (Tenn. Ct. App. 1989)).

When considering whether a plaintiff's reliance upon a misrepresentation is reasonable, several factors may be considered:

> (1) the plaintiff's business expertise and sophistication; (2) the existence of a longstanding business or personal relationship between the parties; (3) the availability of the relevant information; (4) the existence of a fiduciary relationship; (5) the concealment of the fraud; (6) the opportunity to discover the fraud; (7) which party initiated the transaction; and (8) the specificity of the misrepresentation.

*Goodall v. Akers*, No. M2008-01608-COA-R3-CV, 2009 WL 528784, at *6 (Tenn. Ct. App. Mar. 3, 2009) (quoting *Pitz v. Woodruff*, No. M2003-01849-COA-R3-CV, 2004 WL 2951979, at *10 (Tenn. Ct. App. Dec. 17, 2004)); *see also Hunt v. Veropele Nashville I, LLC*, No. M2014-01046-COA-R3-CV, 2015 WL 9946403, at *12 (Tenn. Ct. App. Aug. 18, 2015). Although the question of whether a plaintiff's reliance on an alleged misrepresentation was reasonable is "generally a question of fact inappropriate for summary judgment," *City State Bank v. Dean Witter Reynolds, Inc.*, 948 S.W.2d 729, 737

(Tenn. Ct. App. 1996), this Court has granted summary judgment on this issue in prior cases. *See Rural Dev., LLC v. Tucker*, No. M2008-00172-COA-R3-CV, 2009 WL 112541, at*6-9 (Tenn. Ct. App. Jan. 14, 2009); *Annaco, Inc.*, 1998 WL 929637, at *4-5.

We must also consider what effect Mr. King's execution of the contract on Ms. King's behalf has on the justifiable reliance analysis. The trial court held,

> [Mr. King] was made Ms. King's agent based on his representations through her. If his reliance on whatever Mr. Bradley said or didn't say is not reasonable, I think it's not under the law. Then hers can't be either. I think she's -- in making her husband her agent, she is charged with knowledge that he's charged with and I just don't see how it can be different. . . . I think the law requires that she is responsible for what she signs or what she authorizes her agent to sign. She had the opportunity to come look at it. They both had the opportunity to take it to counsel to have it explained to them.

We agree with the trial court's holding. There is no dispute that Ms. King gave Mr. King express authority to execute the contract for her and bind her to its terms. *See Hall v. Haynes*, 319 S.W.3d 564, 573 (Tenn. 2010) ("A principal may expressly give actual authority to the agent in direct terms, either orally or in writing."). The relationship between the agent (Mr. King) and the principal (Ms. King) "is fiduciary in nature and generally treated with the same gravity and strictness as the trustee-beneficiary relationship." *Eaton ex rel. Johnson v. Eaton*, 83 S.W.3d 131, 135 (Tenn. Ct. App. 2001). In her deposition, Ms. King was asked "is it your practice to read the documents you sign" and she responded:

> When it comes to – typically outside of this, yes. When it came to [Rutledge Pike], I was presented a lot of things by my husband, sometimes in a rush, and just asked to sign it because we had to do it to move forward, and I did trust my husband's guidance on those things.

Mr. King functioned as Ms. King's agent when signing her name to the GAI, and his reliance on Mr. Bradley is imputed to Ms. King.

With respect to the factors we may consider when determining whether a plaintiff's reliance upon a misrepresentation is reasonable, we place heightened significance on the third and sixth factors in this case: "the availability of the relevant information" and "the opportunity to discover the fraud." *Goodall*, 2009 WL 528784, at *6. There was no evidence that the Kings were discouraged or prevented from reading the contract, and there was no evidence that they were hindered in any way from taking the GAI to an attorney for review and clarification if they wished to do so. The unrefuted testimony is that Mr. King simply did not read the GAI. This is unfortunate, because "an individual who signs a contract is presumed to have read the contract and is bound by its contents." *84 Lumber*

*Co. v. Smith*, 356 S.W.3d 380, 383 (Tenn. 2011). As to the first factor, Ms. King's business expertise and sophistication, she had been a real estate agent for over a decade and was generally familiar with executing contracts. In this scenario, Ms. King requested Mr. King to act on her behalf. Mr. King was a businessowner; therefore, he was also relatively sophisticated and experienced. In fact, the evidence shows that Mr. and Ms. King both signed a similarly worded GAI in 2012. Moreover, not only did Mr. King sign the GAI at the center of this dispute on behalf of Ms. King, he signed it on behalf of Rutledge Pike and on his own behalf, individually. Mr. King had the motivation and means—the contract itself and the ability to read paragraph 9—to obtain the information needed to discover the discrepancy between Mr. Bradley's alleged statements and the contract's terms regarding the Kings' personal assets. Instead, Mr. and Ms. King, acted with "blind faith" on Mr. Bradley's representations, despite the fact that the means of informing themselves of the truth were at hand. *See McNeil*, 185 S.W.3d at 409 ("'Where the means of information are at hand and equally accessible to both parties so that, with ordinary prudence or diligence, they might rely on their own judgment, generally they must be presumed to have done so . . . .'" (quoting *Pakrul*, 631 S.W.2d at 438)). Under these circumstances, we conclude that the Kings' reliance on Mr. Bradley's misrepresentations was not reasonable or justifiable, and therefore, we affirm the trial court's grant of summary judgment to Mr. Bradley on the issue of negligent misrepresentation.

III.    Negligence

Finally, Ms. King asserts that the trial court erred in dismissing her entire action because it ignored her claim for "agent and/or broker negligence." In her brief, Ms. King argues that Mr. Bradley was "negligent both by: 1) acquiring and supplying the 2015 GAI to the Kings and 2) misrepresenting its terms relative to King's personal assets." The second prong of her argument is essentially a restatement of her negligent misrepresentation claim, which we have already addressed. As for her first assertion, we are not aware of any specific Tennessee law preventing an insurance agent from procuring a policy that their customer requests, and Ms. King has not pointed us to any caselaw or statutes in support of her assertion.[5] Ms. King submitted the affidavit of Joshua Witt, an experienced insurance agent from Knoxville who opined that Mr. Bradley "appears to have improperly advised Hope King about the terms of the GAI and/or to have taken the [sic] lightly the significant risk posed to Hope King's assets by the GAI if [Rutledge Pike] failed in Jacksonville." Mr. Witt's affidavit relates to Ms. King's negligent misrepresentation claim rather than to her claim that Mr. Bradley was negligent in procuring the GAI in the first instance. To the extent that Ms. King's "agent and/or broker negligence" argument is distinct from her negligent misrepresentation argument, she does not articulate it in a manner that allows us to sufficiently assess it. "It is not the role of the courts, trial or

---

[5] We note, however, that there is a cause of action for an insurance agent's "wrongful failure to procure insurance as authorized or directed" which is the opposite of the scenario presented in this case. *Morrison v. Allen*, 338 S.W.3d 417, 426 (Tenn. 2011).

- 10 -

appellate, to research or construct a litigant's case or arguments for him or her, and where a party fails to develop an argument in support of his or her contention or merely constructs a skeletal argument, the issue is waived." *Sneed v. Bd. of Prof'l Responsibility of Supreme Ct.*, 301 S.W.3d 603, 615 (Tenn. 2010). Therefore, Ms. King's argument that Mr. Bradley was negligent in procuring the GAI her husband requested is waived.

CONCLUSION

The judgment of the trial court is affirmed. Costs of this appeal are taxed to the appellant, Hope King, for which execution may issue if necessary.

_/s/ *Andy D. Bennett*_____
ANDY D. BENNETT, JUDGE