IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
August 6, 2025 Session

## STEPHEN JOHNSON v. DAVID A. LEFEVE ET AL.

**Appeal from the Chancery Court for Williamson County**
**No. 23CV-52680W Joseph A. Woodruff, Judge**

_____

**No. M2024-01484-COA-R3-CV**

_____

This case stems from an alleged oral promise by the owner of two companies to pay the chief financial officer of one company a bonus of ten percent of the "profits" of both companies for work performed for the companies, including related to the sale of certain real property by one company. The plaintiff sued, alleging breach of contract, promissory estoppel, fraud, and unjust enrichment. The defendants, the companies and their owner, filed a motion to dismiss on the grounds that the claims were barred by the parties' written contract and the Tennessee Real Estate Broker License Act. The trial court denied the motion to dismiss but later granted summary judgment on all of plaintiff's claims and ruled in favor of the defendant as to their defense under the real estate broker statute. Both parties appeal. We affirm the grant of summary judgment as to the plaintiff's claims for fraud and unjust enrichment but reverse as to the claims for breach of oral contract and promissory estoppel. We also reverse the trial court's grant of summary judgment to the defendants on their defense under the real estate broker statute.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in Part, Reversed in Part, and Remanded**

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., C.J., and W. NEAL MCBRAYER, J., joined.

Stephen S. Duggins and Colson Duggins, Chattanooga, Tennessee, for the appellant, Stephen Johnson.

Benjamin E. Goldammer and Casey R. Malloy, Nashville, Tennessee, for the appellees, IKON Construction, Inc., IKON Development, LLC, and David A. LeFeve.

**OPINION**

On July 20, 2023, Plaintiff/Appellant Stephen Johnson ("Plaintiff") filed a complaint against Defendants/Appellees David A. LeFeve, IKON Development, LLC ("IKON Development"), and IKON Construction, Inc. ("IKON Construction," and collectively, "Defendants") in the Williamson County Chancery Court ("the trial court"). Therein, Plaintiff alleged that Mr. LeFeve was the sole owner of IKON Construction and majority owner of IKON Development. According to Plaintiff, the two companies are intermingled. Plaintiff alleged that he was hired by IKON Construction prior to 2016, but in that year, he was promoted to Chief Financial Officer ("CFO") and promised that he would receive ten percent of the profits of "the company." And indeed, Plaintiff asserted that he and a vice president of "the company" each received ten percent of the profits for many years.

Plaintiff further asserted that over time he began to perform more duties for IKON Development, despite not receiving separate compensation from IKON Development. In particular, Plaintiff alleged that he was "extensively involved" in the sale of a parcel of land and a building ("the Property") owned by IKON Development; as a result of his efforts, IKON Development "was able to sell its building for a substantially greater profit than what would have otherwise occurred." Related to the sale of the Property, Plaintiff alleged as follows:

> 34. During the period of June 2021 through November of 2021, Mr. LeFeve repeatedly represented to [Plaintiff] that [Plaintiff] would receive his share of the profits from the sale of the IKON Development building.
>
> 35. Mr. LeFeve conveyed to [Plaintiff] that [Plaintiff] would receive a percentage of the profits from IKON Development as he had been doing from IKON Construction.
>
> 36. [Plaintiff] provided services to IKON Development in reasonable reliance upon Mr. LeFeve's representations that [Plaintiff] would receive his share of the profits from the sale of the building.
>
> 37. IKON Development closed on the sale of its building in approximately November of 2021.
>
> 38. [Plaintiff] assisted Mr. LeFeve and IKON Development with the negotiations for the sale of the building.
>
> 39. As the deal was in the process of being negotiated, Mr. LeFeve informed [Plaintiff] that [Plaintiff] would be receiving 10% of the profits from that sale.
>
> 40. [Plaintiff] continued to provide services for Mr. LeFeve, IKON Construction, and IKON Development in reliance upon Mr. LeFeve's promise of profit sharing.

41. IKON's profits on the sale of the building were approximately $2.65 million.

42. [Plaintiff's] efforts contributed greatly to the amount of the profits.

43. [Plaintiff] provided the services to IKON Development with the expectation of receiving 10% [of] IKON Development's profits.

44. Mr. LeFeve was aware of [Plaintiff's] expectation and in fact caused [Plaintiff's] expectation through Mr. LeFeve's own statements and assurances.

45. After the sale of IKON Development's building, Mr. LeFeve and IKON Development failed and refused to pay [Plaintiff] any percentage of the profits.

46. When [Plaintiff] asked Mr. LeFeve about when he would be getting his 10% share of the profits, Mr. LeFeve told [Plaintiff], for the first time, "That is not going to happen."

47. Shortly after this, Mr. LeFeve terminated [Plaintiff's] employment with IKON Construction.

48. [Plaintiff] had never received a poor work performance report.

49. Mr. LeFeve had consistently told [Plaintiff] that he was doing an excellent job.

50. Nevertheless, after refusing to pay [Plaintiff] what he rightfully expected, Mr. LeFeve terminated [Plaintiff] in retaliation for requesting a 10% share of the profits.

51. Mr. LeFeve and IKON Construction have also failed to pay [Plaintiff] his last percentage of ordinary profits from IKON Construction.

Thus, Plaintiff asserted that Defendants' failure to pay him ten percent of the profits of both IKON Development (largely the result of the $2.65 million profit from selling the Property), and his final year of employment with IKON Construction constituted a breach of contract. Plaintiff also brought claims for quantum meruit/unjust enrichment, promissory estoppel, and fraud. Plaintiff sought $350,000.00 in compensatory damages and punitive damages.[1]

Defendants filed a motion to dismiss on August 4, 2023, arguing that Plaintiff could not recover a bonus or other compensation from the sale of the Property because he did not hold a real estate license, that Plaintiff's entitlement to bonuses was entirely discretionary

---

[1] The parties entered into an agreed order of partial summary judgment to dismiss Plaintiff's claim for punitive damages "to the extent that the claim exceeds two times the total amount of compensatory damages or $500,000.00, whichever is greater."

under the parties' written contract, and that the fraud claim was not pleaded with particularity. Defendants attached to their motion a March 21, 2016 written contract between Plaintiff and IKON Construction in which Plaintiff was

> gratuitously offer[ed] a portion of [IKON Construction's] net profits (Ten (10) percent) which the parties agree is without consideration from [Plaintiff]. The total net profit amount may be based on a percentage of net profits after the calculation of the profits needed to: maintain the companies bonding program, retain the required unlimited contractors licensing capabilities and any other funds deemed necessary to remain within the Company deemed necessary by Cooper Travis, Inc. CPA. of [IKON Construction] of which percentage will be disclosed on an attached Schedule (TBD) as determined by [IKON Construction] from year to year in the employer's sole and absolute discretion.

> [Plaintiff] understands that employer is not bound to pay employee the net profit amount. In addition, the calculation of the net profit amount shall be solely determined by [IKON Construction] and [Plaintiff] shall not be entitled to view the employer's financial statements, tax returns or any other employer information used by the employer in calculating the net profit amount.

> . . . . . . . . [IKON Construction] has the right to discontinue . . . any payments hereunder at any time in its sole and absolute discretion without notice. For avoidance of doubt, [IKON Construction] has the right not to pay the net profit amount in any year before or after such amount has been calculated prior to its payment for any reason or no reason whatsoever.

The 2016 written contract contained no integration clause and no provision expressly stating that the parties could not contract orally on the subject of bonuses. The contract was signed by Plaintiff and Mr. LeFeve as President of IKON Construction.

Plaintiff subsequently moved to amend his complaint to add more detailed allegations concerning the sale of the Property by IKON Development. Moreover, Plaintiff asserted that he served as "CFO of both IKON Development and IKON Construction, despite being paid through only one entity." Plaintiff further alleged that he arranged for the Property to be listed with a real estate broker, who handled the actual sale of the Property to the buyer, including advertising the Property, solicitation of buyers, and negotiating with potential buyers. Plaintiff's allegations concerning the promises of profit-sharing were largely unchanged in the amended complaint. Plaintiff also responded in opposition to Defendants' motion to dismiss, asserting that he did not act as a real estate broker, that the written contract did not control because Plaintiff was alleging breach of an oral promise made by Defendants, and that fraud was sufficiently pleaded.

The trial court eventually denied the motion to dismiss but noted that the same arguments could be raised again "in the future within the appropriate analytical

framework." The trial court further ruled that Plaintiff would be permitted to file his amended complaint. Defendants then filed an answer to the amended complaint in which they denied the material allegations therein. As affirmative defenses, Defendants raised, inter alia, the Statute of Frauds and Plaintiff's failure to hold a real estate license.

A series of discovery disputes ensued, culminating in a May 21, 2024 order that prohibited Plaintiff "from producing any subsequent factual material or testimony in this case to support any claim for which he bears the burden of proof or refute any affirmative defense for which any Defendant bears the burden of proof."[2] The trial court's prohibition applied to both summary judgment and to any future trial. Defendants were also awarded attorney's fees.

Defendants filed a motion for summary judgment, supporting memorandum, and statement of undisputed material facts on June 10, 2024. Therein, Defendants argued that Plaintiff's claims for breach of contract and promissory estoppel failed because the 2016 contract gave IKON Construction absolute discretion in determining whether to pay bonuses. Defendants further asserted that Plaintiff could not prevail under an oral contract theory because there was no mutual assent and there was no meeting of the minds between the parties as to two essential terms: the scope of Plaintiff's duties to Defendants and the definition of "profit," the alleged promises were "impossibly vague." Defendants again asserted that Plaintiff's claim for ten percent of the profits realized from the sale of the Property was prohibited because Plaintiff did not hold a real estate license. And Defendants argued that Mr. LeFeve could not be personally liable for any alleged obligations of either IKON Construction or IKON Development. Defendants also asserted that Plaintiff could not prove the reasonable value of his services to Defendants to sustain his quantum meruit/unjust enrichment claim and that the existence of the 2016 written contract prevented recovery on a quasi-contract basis. Finally, Defendants asserted that Plaintiff could not demonstrate that Defendants acted with the intent to defraud him.

Mr. LeFeve filed a declaration in support of the motion for summary judgment in which he stated, in relevant part, as follows:

10. Ikon Development did not ever provide [Plaintiff] with any compensation of any type, including bonus compensation. [Plaintiff] and I never reached any agreement of any type regarding compensation paid by Ikon Development to [Plaintiff].

11. I did not ever personally provide [Plaintiff] with any bonus compensation. Instead, I always acted as an agent of Ikon Construction when paying bonuses.

12. I did not ever reach an agreement with [Plaintiff] regarding any definition or method of calculation of "profit" for the calculation of bonus payments

_____

[2] The May 21, 2024 sanctions order has not been appealed, so we will not tax the length of this Opinion with a discussion of the basis for the trial court's decision.

from either Ikon entity. The Contract specifically allows Ikon Construction to calculate bonuses in any way it chooses.

13. I did not ever reach an agreement with [Plaintiff] regarding the scope of any services to be performed for Ikon Development.

14. I did not ever intend to lie to or mislead [Plaintiff] on behalf of myself or either Ikon entity.

Plaintiff responded in opposition to Defendants' motion for summary judgment on July 10, 2024. Plaintiff particularly took issue with Defendants' denial that an oral contract was created in which Defendants agreed to pay Plaintiff ten percent of the profits from both IKON companies. Plaintiff pointed out that Defendants did not deny that any such oral promises were made in their statement of undisputed facts, but only that the parties never reached an agreement as to two essential terms.[3] But Plaintiff argued that the promises of ten percent of the profits for Plaintiff's continued duties to IKON Construction and IKON Development, particularly his assistance with the sale of the Property, was not vague. Moreover, he asserted that these alleged promises could be defined with reference to the parties' past conduct and course of dealing, including the 2016 written contract's definition of "profits." As the factual support for his claims, Plaintiff referenced his own interrogatory responses, which were notarized and sworn "that the answers are, to the best of [Plaintiff's] knowledge and belief, true and correct."

The trial court eventually granted Defendants' motion for summary judgment by order of August 29, 2024. The trial court first concluded that Plaintiff failed to prove the existence of an enforceable oral contract. The trial court noted that Plaintiff's interrogatory responses were "not authenticated or supported by any other documentation."[4] The trial court instead found they were self-serving assertions by Plaintiff. The trial court nevertheless considered the responses, finding that they did not create a genuine issue of material fact as to whether an enforceable contract existed. Rather, the trial court found the purported promissory statements to be too vague to be enforceable, as Plaintiff's interrogatory responses did not "show when the statements were made, where they were made, when the contract was intended to be commenced and completed, or anything other than the blanket assertion that 'Mr. LeFeve promised' that [Plaintiff] would receive 10% of the 'profits' from two separate companies, one of which he never worked for." The trial

---

[3] Specifically, Defendants alleged the following as undisputed material facts:

4. [Plaintiff] and Defendants did not ever reach an agreement regarding any definition or method of calculation of "profit" for the calculation of any bonus payments.
5. [Plaintiff] and Defendants did not ever reach an agreement regarding the scope of any services to be provided by [Plaintiff] to Ikon Development.

(Record citations omitted). Plaintiff disputed each of these alleged facts.

[4] The trial court then conceded that the responses were notarized but took issue with the fact that they were not sworn to be true under penalty of perjury.

court further ruled the vagueness of Plaintiff's allegations also barred relief under the theory of promissory estoppel.

The trial court next ruled that Plaintiff's efforts seeking to hold Mr. LeFeve individually liable should be dismissed, as any claim seeking to pierce the corporate veil to hold Mr. LeFeve liable had not been properly raised. The trial court then dismissed Plaintiff's claim under the theory of quantum meruit/unjust enrichment because Plaintiff provided no proof of the reasonable value of his services. The trial court also granted summary judgment as to Plaintiff's fraud claim, on the basis that the alleged promises lacked definiteness and there was no proof that Defendants intended not to pay Plaintiff. Finally, the trial court ruled that to the extent that Plaintiff sought recovery of ten percent of the profits from the sale of the Property, he could not recover because he is not a licensed real estate broker. All of Plaintiff's claims having been dismissed, he then appealed to this Court.

## II. ISSUES PRESENTED

Plaintiff presents the following issues, as we perceive them:

1. Did the trial court err by granting summary judgment to Defendants on Plaintiff's oral contract claim?
2. Did the trial court err by granting summary judgment to Defendants on Plaintiff's promissory estoppel claim?
3. Did the trial court err by granting summary judgment to Defendants on Plaintiff's fraud claim?
4. Did the trial court err by granting summary judgment to Defendants on Plaintiff's quantum meruit claim?
5. Did the trial court err by granting summary judgment to Defendants on their "unlicensed real estate broker" defense?

Defendants raise two additional issues on appeal: (1) whether this Court should award Defendants damages for pursuing a frivolous appeal; and (2) whether the trial court erred in denying their motion to dismiss Plaintiff's claim for profits related to the sale of IKON Development's real estate.[5]

## III. STANDARD OF REVIEW

We review the trial court's grant of summary judgment de novo, with no presumption of correctness. ***Rye v. Women's Care Ctr. of Memphis, MPLLC***, 477 S.W.3d 235, 250 (Tenn. 2015) (citing ***Bain v. Wells***, 936 S.W.2d 618, 622 (Tenn. 1997); ***Abshure***

---

[5] Plaintiff has specifically denied advancing an appellate argument against the trial court's ruling that Mr. LeFeve could not be held personally liable for any judgment against the two IKON entities under a piercing the corporate veil theory. Although it therefore does not appear that any individual claims against Mr. LeFeve are at issue in this case, the appellees' brief is explicitly captioned as filed by all three Defendants. To avoid the confusion, we will continue referring to "Defendants" throughout this Opinion.

*v. Methodist Healthcare-Memphis Hosp.*, 325 S.W.3d 98, 103 (Tenn. 2010)). As part of our review, we must not only "take the strongest legitimate view of the evidence" in the nonmoving party's favor, but we also "allow all reasonable inferences" in the nonmoving party's favor. *Copeland v. Healthsouth/Methodist Rehab. Hosp., LP*, 565 S.W.3d 260, 276 (Tenn. 2018). We similarly accept the evidence presented by the nonmoving party as true and resolve any doubts about the existence of a genuine issue of material fact in its favor. *TWB Architects, Inc. v. Braxton, LLC*, 578 S.W.3d 879, 887 (Tenn. 2019) (citing *Martin v. Norfolk S. Ry.*, 271 S.W.3d 76, 84 (Tenn. 2008)). A party is entitled to summary judgment only if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Tenn. R. Civ. P. 56.04.

The central dispute in this case concerns the existence of an enforceable oral contract. Courts have recognized that disputes involving oral contracts, predicated often on conflicting testimony, are not always amenable to summary judgment. *See Ecore Int'l, Inc. v. Downey*, 343 F. Supp. 3d 459, 488 (E.D. Pa. 2018) ("Given that the intent of the parties to be bound is a requisite element of contract formation, 'oral contracts make it particularly difficult to extricate the matters of law from the questions of fact.'" (quoting *Bennett v. Itochu Int'l, Inc.*, Nos. 09-1819, 09-4123, 2012 WL 3627404, at *15 (E.D. Pa. Aug. 23, 2012))); *see also Tucker v. Tucker*, No. 02A01-9306-CH-00131, 1994 WL 52648, at *3 (Tenn. Ct. App. Feb. 23, 1994) (noting that where the parties presented conflicting testimony on the question of an oral contract, the dispute was to be resolved on the basis of credibility by the trier of fact). A claim for an oral contract may be dismissed at the summary judgment stage, however, "if a binding contract could not exist under the undisputed set of facts." *Ecore Int'l*, 343 F. Supp. 3d at 488 (quoting *Bennett*, 2012 WL 3627404, at *15). In other words, the court "must determine whether a reasonable jury, considering the parties' undisputed actions and words, could find that they formed a binding oral contract. That inquiry may be resolved at the summary judgment stage." *Id.*

## IV. ANALYSIS

### A. Breach of Contract

Plaintiff first appeals the trial court's decision to grant summary judgment to Defendants on his breach of an oral contract claim. In order to prevail on a breach of contract claim, the plaintiff must demonstrate the following elements: "(1) the existence of an enforceable contract, (2) nonperformance amounting to a breach of the contract, and (3) damages caused by the breach of the contract." *Leedy v. Hickory Ridge, LLC*, 663 S.W.3d 537, 548 (Tenn. Ct. App. 2022) (quoting *ARC LifeMed, Inc. v. AMC-Tenn., Inc.*, 183 S.W.3d 1, 26 (Tenn. Ct. App. 2005)). "An oral agreement is enforceable, but the party seeking to enforce it must prove (1) mutual assent to the contract's terms and (2) that the terms are sufficiently definite to be enforceable." *Davidson v. Holtzman*, 47 S.W.3d 445,

453 (Tenn. Ct. App. 2000) (citing *Castelli v. Lien*, 910 S.W.2d 420, 426–27 (Tenn. Ct. App. 1995)).[6] With regard to the mutual assent requirement, this Court has explained,

> The mutual assent need not be manifested in writing. It may be manifested, in whole or in part, by the parties' spoken words or by their actions or inactions. *Cole-McIntyre-Norfleet Co. v. Holloway*, 141 Tenn. 679, 685, 214 S.W. 817, 818 (1919); *Restatement (Second) of Contracts* § 19(1) (1979). It should not, however, be inferred from the unilateral acts of one party or by an ambiguous course of dealing between the parties from which different inferences regarding the terms of the contract may be drawn. *Jamestowne on Signal, Inc. v. First Fed. Sav. & Loan Ass'n*, 807 S.W.2d 559, 564 (Tenn. Ct. App. 1990). Mutual assent also may not rest solely on the uncommunicated intentions or states of mind of the contracting parties. *Simonton v. Huff*, 60 S.W.3d 820, 826 (Tenn. Ct. App. 2000); *Bill Walker & Assocs., Inc. v. Parrish*, 770 S.W.2d [764,] 770 [(Tenn. App. 1989)].

*Burton v. Warren Farmers Co-op.*, 129 S.W.3d 513, 521 (Tenn. Ct. App. 2002). "In determining mutuality of assent, courts must apply an objective standard based upon the parties' manifestations." *Staubach Retail Servs.-Se., LLC v. H.G. Hill Realty Co.*, 160 S.W.3d 521, 524 (Tenn. 2005).

As to the question of whether a promise is sufficiently definite to be enforced, we have noted as follows:

> Even though a manifestation of intention is intended to be understood as an offer, it cannot be accepted so as to form a contract unless the terms of the contract are reasonably certain.
>
> The terms of a contract are reasonably certain if they provide a basis for determining the existence of a breach and for giving an appropriate remedy.
>
> The fact that one or more terms of a proposed bargain are left open or uncertain may show that a manifestation of intention is not intended to be understood as an offer or as an acceptance.

*Jamestowne on Signal*, 807 S.W.2d at 564 (quoting *Restatement (Second) of Contracts* § 33)). In other words,

> "A contract must be of sufficient explicitness so that a court can perceive what are the respective obligations of the parties." *Doe v. HCA Health Servs. of Tenn., Inc.*, 46 S.W.3d 191, 196 (Tenn. 2001) (citation omitted). The terms of the contract are reasonably certain if they provide a basis for determining the existence of a breach of the contract and for giving an

---

[6] Some oral contracts are barred by law, such as under the Statute of Frauds. Although Defendants raised the Statute of Frauds in their answer, they did not argue that it was applicable in their motion for summary judgment.

appropriate remedy. *Id.* (quoting *Restatement (Second) of Contracts*, § 33(2) (1981)). "If the essential terms of an alleged agreement are so uncertain that there is no basis for deciding whether the agreement has been kept or broken, there is no contract." *Peoples Bank of Elk Valley* [*v. ConAgra Poultry Co.*], 832 S.W.2d [550,] 553–54 [(Tenn. Ct. App. 1991)] (citing *Restatement (Second) of Contracts*, § 33 (1981)).

*Earls v. Blankenship*, No. W2009-01959-COA-R3-CV, 2010 WL 3210751, at *8 (Tenn. Ct. App. Aug. 16, 2010) (involving a written contract).

In his sworn interrogatory responses,[7] Plaintiff claimed that Mr. LeFeve orally promised on multiple occasions that he would be paid ten percent of the profits of IKON Construction and IKON Development in exchange for his services to those companies.[8] Indeed, Defendants did not dispute, for purposes of summary judgment, that promises were made to Plaintiff involving paying him a ten percent share of the profits of the two

---

[7] The trial court's order appears to take issue with Plaintiff's interrogatory responses because they do not state that they were made under penalty of perjury. Under Rule 72 of the Tennessee Rules of Civil Procedure, an unsworn declaration under penalty of perjury may be used in lieu of a sworn affidavit or declaration. Neither Defendants nor the trial court cite any law requiring such language to be used in a sworn, notarized document. And Rule 56 of the Tennessee Rules of Civil Procedure clearly contemplates that interrogatory responses may be used to oppose the affidavits filed in support of a motion for summary judgment. *See* Tenn. R. Civ. P. 56.06 ("The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but his or her response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."); *see also* Tenn. R. Civ. P. 56.04 ("Subject to the moving party's compliance with Rule 56.03, [summary] judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."); *cf. Webb v. Hays*, No. M2009-01939-COA-R3-CV, 2010 WL 1687759, at *4 (Tenn. Ct. App. Apr. 26, 2010) (holding that plaintiff could not rely on sworn interrogatory responses in response to a motion for summary judgment only because the statement contained therein were inadmissible hearsay). *But cf. Bennett v. City of Memphis*, No. W2011-00577-COA-R3-CV, 2011 WL 6710447, at *7 (Tenn. Ct. App. Dec. 21, 2011) (noting that testimony of operative facts, such as "words of acceptance in the context of whether a contract was formed" are not hearsay).

[8] In particular, Plaintiff's sworn interrogatory states as follows:

> [Mr.] LeFeve and I had numerous conversations in his office that I was to benefit from the profits of IKON Development and that this included from the sale of the building, but I was never paid. Specifically, he promised me 10% of the profits.
>
> ….
>
> [T]he communications were direct face-to-face conversations with [Mr.] LeFeve at IKON's office and were generally during the period of June, 2021, through November, 2021. Mr. LeFeve promised me repeatedly that I was to be rewarded financially from the profits of IKON. This included both IKON Construction and IKON Development. He also specifically said I would receive 10% of the profits.

companies. As previously discussed, the parties' mutual assent may be manifested by "the parties' spoken words[.]" *Burton*, 129 S.W.3d at 521. In fact, federal courts have held in this context that "[w]hen there is no written instrument and the existence of contractual provisions are in dispute, a plaintiff's 'own testimony as to the terms of the contract is sufficient "evidence" to withstand summary judgment absent a legal impediment to an oral contract (such as the statute of frauds).'"[9] *Next Payment Sols., Inc. v. CLEAResult Consulting, Inc.*, No. 17 C 8829, 2019 WL 955354, at *19 (N.D. Ill. Feb. 27, 2019) (quoting *Angelopoulos v. Keystone Orthopedic Specialists, S.C.*, 207 F. Supp. 3d 850, 861 (N.D. Ill. 2016)), *aff'd*, No. 24-1377, 2026 WL 91208 (7th Cir. Jan. 13, 2026). Given the evidence contained in Plaintiff's sworn interrogatory responses, coupled with Defendants' failure to deny, for purposes of summary judgment, that Mr. LeFeve made some promises to Plaintiff that he would be entitled to ten percent of the profits of IKON Construction and IKON Development, we cannot conclude that Defendants have shown that they are entitled to judgment as a matter of law on the question of whether there was mutual assent to a promise to pay Plaintiff ten percent of the profits of both companies.[10]

Thus, the real dispute in this case appears to be whether the promises that were allegedly made, i.e., those terms that Plaintiff has testified there was mutual assent to, are definite enough to be enforced. Specifically, it appears that Defendants attempted to shift the burden of production to Plaintiff by demonstrating that Plaintiff could not produce evidence showing that Defendants assented to any specific terms concerning the scope of work that Plaintiff was required to perform to be paid the bonus or how "profits" would be

---

[9] Defendants also take issue with the fact that Plaintiff's interrogatory responses were self-serving and without documentary support. Generally, all proof that a party chooses to present will serve his or her interest. Here, Plaintiff presented his sworn interrogatory responses to support his claims, while Defendants presented the declaration of Mr. LeFeve to support their defenses. In the case of oral contracts, the proof is often testimony by the opposing sides that a contract did or did not exist, or that a contract included or did not include some term. *See, e.g.*, *Tucker*, 1994 WL 52648, at *3 (holding that where the plaintiff and the defendant present conflicting testimony as to the substance of the conversation that one side asserts created an oral contract, the dispute must be resolved on the basis of credibility by the trier of fact).

This Court's decision in *Huggins v. McKee*, 500 S.W.3d 360 (Tenn. Ct. App. 2016), does not require an opposite result. In *Huggins*, we agreed with the trial court that the plaintiff's testimony alone was insufficient to establish a dispute of material fact sufficient to avoid summary judgment. *Id.* at 371. There, the plaintiff alleged that he made a significant financial contribution to a partnership, which the defendant disputed with documentary proof. *Id.* at 370. The plaintiff never, in over a decade of litigation, produced any financial statements, check stubs, or other proof that showed a financial contribution, evidence that should have been available had such a contribution been made. *Id.* at 371. The same is not necessarily true of an oral contract, which need not be evidenced by documentary proof, unless required by law, and may be evidenced by nothing more than the testimony of a party. *See Next Payment Sols.*, 2019 WL 955354, at *19. Here, Plaintiff's sworn interrogatory responses contained detailed answers providing the factual basis for his claim that an oral contract was created. As such, the interrogatory responses are properly considered for purposes of summary judgment.

[10] Moreover, nothing in either parties' proof asserts that the alleged oral contract was subject to the same discretionary terms as the 2016 written contract. Taking this proof in the light most favorable to Plaintiff, we conclude that Defendants have not demonstrated that the alleged oral contract promised a bonus only at Defendants' sole discretion.

calculated. The trial court also took issue with the fact that Plaintiff did not provide specific proof of "when the statements were made, where they were made, [or] when the contract was intended to be commenced and completed[.]" We will therefore consider the evidence presented by Plaintiff as to these concerns. *See **Rye***, 477 S.W.3d at 265 (holding that when a properly supported motion for summary judgment is made, the nonmoving party "may not rest upon the mere allegations or denials of its pleading, but must respond, and by affidavits or one of the other means provided in Tennessee Rule 56, set forth specific facts *at the summary judgment stage* showing that there is a genuine issue for trial" (quotation marks and brackets omitted) (citing Tenn. R. Civ. P. 56.06)).

With regard to the scope of the work to be performed, Plaintiff provided his sworn interrogatory responses, which he asserted contained evidence of the parties' course of conduct. In particular, Plaintiff alleged that he worked with IKON Development three times over the years to purchase buildings, renovate them, and then rent them to IKON Construction or sell them to benefit IKON Construction. Plaintiff further alleged that it was an established practice for him to "keep the books" for IKON Development but that he never received any wages directly from IKON Development because Plaintiff was promised that he would benefit from the profits of that company. Indeed, Plaintiff stated that he was essentially treated as CFO of both IKON Development and IKON Construction. According to Plaintiff, he performed work in this way for twenty years and helped to grow the business, and Mr. LeFeve promised that his efforts would be rewarded through sharing of the companies' profits. Plaintiff also detailed the specific work that he performed for Defendants in selling the Property.

As to the specifics of the alleged obligation, Plaintiff alleged in his sworn interrogatory responses that Mr. LeFeve promised that Plaintiff would be paid ten percent of the "profits" of both IKON Development and IKON Construction as remuneration for his work for both companies, particularly as it related to the sale of the Property. Plaintiff alleged that these conversations took place on multiple occasions, most notably between June and November 2021, in Mr. LeFeve's office, riding together in Mr. LeFeve's truck, and during work lunches. Plaintiff further alleged that Mr. LeFeve stated that the profits would be paid at the end of the year and that the more profit the IKON companies made, the more he would make. Plaintiff also stated that this promise was confirmed by IKON's accountant. Finally, Plaintiff pointed to the parties' 2016 written agreement as evidence of a course of conduct or dealing between the parties "that established the definition or method of calculation of profit[.]"

Thus, we turn to the question of whether Plaintiff's proof as to the substance of the parties' alleged oral contract, taken in the light most favorable to him, is sufficient to create a genuine dispute of material fact. According to Defendants, this proof shows nothing more than promises that are "impossibly vague" and impossible to enforce. In resolving this dispute, we, like prior panels of this Court, find the guidance of the *Restatement* particularly illuminating:

An offer which appears to be indefinite may be given precision by usage of trade or by course of dealing between the parties. Terms may be supplied by factual implication, and in recurring situations the law often supplies a term in the absence of agreement to the contrary. Where the parties have intended to conclude a bargain, uncertainty as to incidental or collateral matters is seldom fatal to the existence of the contract. If the essential terms are so uncertain that there is no basis for deciding whether the agreement has been kept or broken, there is no contract. But even in such cases partial performance or other action in reliance on the agreement may reinforce it . . . .

*Restatement (Second) of Contracts* § 33 (citation omitted); *see **Gurley v. King***, 183 S.W.3d 30, 35 (Tenn. Ct. App. 2005) (citing this portion of the *Restatement*); *see also, e.g.*, ***Doe***, 46 S.W.3d at 196 (citing other portions of this section of the Restatement); ***Jamestowne on Signal***, 807 S.W.2d at 564 (same). A course of dealing generally refers to "[a]n established pattern of conduct between the parties in a series of transactions." *Black's Law Dictionary* (9th ed. 2009).

From our review, it appears that many of our cases in which the indefiniteness of an oral contract was at issue were decided following trials. *See, e.g.*, ***Clark v. Givens***, No. M2022-00341-COA-R3-CV, 2023 WL 7212225 (Tenn. Ct. App. Nov. 2, 2023); ***Acuff v. Baker***, No. W2018-00687-COA-R3-CV, 2019 WL 211922 (Tenn. Ct. App. Jan. 16, 2019); ***Lay v. Fairfield Dev.***, 929 S.W.2d 352 (Tenn. Ct. App. 1996); ***Castelli***, 910 S.W.2d 420; ***Jamestowne on Signal***, 807 S.W.2d 559. On the other hand, the cases in which this Court has held that a contract was too vague to be enforced at the summary judgment stage have typically involved little more than amorphous promises completely lacking in terms or uncompleted negotiations. *See, e.g.*, ***Hopkins v. Riggs***, No. E2008-02811-COA-R3-CV, 2010 WL 1508647, at *9 (Tenn. Ct. App. Apr. 15, 2010) ("Furthermore, a vague statement such as "if worse comes to worse" is insufficient to support the assertion that a contract was formed based upon this language. Hopkins testified that despite his assertions of an oral contract, he and the Riggs never reached any agreement whatsoever with regard to any details of constructing a road and, as such, any such alleged oral agreement is simply too vague to constitute a contract."); ***Burton v. Mooneyham***, No. M2017-01110-COA-R3-CV, 2018 WL 1377852, at *6 (Tenn. Ct. App. Mar. 19, 2018) ("Thus, the record is devoid of any testimony from the parties to the alleged oral contract . . . . The only 'evidence' in the record that suggests the parties entered into an agreement comes from . . . the brother of the decedent . . . . His testimony, however, which is set forth in his affidavit, fails to provide specifics. The testimony is based on conclusory statements concerning a vague agreement his brother, the decedent, and Defendant may have had as it pertained to Defendant's financial support of the decedent[.]"), *overruled on other grounds by **State v. Al Mutory***, 581 S.W.3d 741 (Tenn. 2019); ***Chavez v. Broadway Elec. Serv. Corp.***, 245 S.W.3d 398, 407–08 (Tenn. Ct. App. 2007) ("The representations upon which the Plaintiffs relied were vague and general descriptions of the job market in Oak Ridge for electricians at the time, and we believe they cannot reasonably be parlayed into enforceable 'promises' supporting

an action for damages for BESCO's failure to employ the Plaintiffs for an extended period of time."); ***Cummins v. Opryland Prods.***, No. M1998-00934-COA-R3-CV, 2001 WL 219696, at *3 (Tenn. Ct. App. Mar. 7, 2001) (affirming the trial court's grant of summary judgment on an oral contract claim when the undisputed facts demonstrated that oral negotiations were ongoing, and a proposed written agreement contained an integration clause indicating that the parties did not intend to be bound by the oral negotiations, and not all of the essential terms were included in the contract); *cf. **In re Est. of Jenkins***, No. 01-A-01-9504-CH00135, 1995 WL 614332, at *4 (Tenn. Ct. App. Oct. 20, 1995) ("The vague promise to 'take care of' claimant is insufficient to support a recovery. To this extent, the ruling of the Trial Judge was correct."). This distinction is not altogether unsurprising because unlike a trial court hearing the proof at a bench trial, a trial court considering a motion for summary judgment may not weigh the evidence but must consider the evidence in the light most favorable to the nonmoving party. *See **Am. Bd. of Craniofacial Pain v. Am. Bd. of Orofacial Pain***, 633 S.W.3d 598, 602 (Tenn. Ct. App. 2020).

Unlike the trial court, we conclude that Plaintiff's proof, when viewed in the light most favorable to him, sufficiently describes the when, where, and what of the alleged oral contract. According to Plaintiff, Mr. LeFeve made the alleged promises multiple times between June 2021 and November 2021, in Mr. LeFeve's office and truck and during work lunches. Mr. LeFeve explained that Plaintiff would be paid the promised ten percent profits at end of the year. Moreover, we agree that the parties' course of dealing can establish the work that Plaintiff was required to perform for purposes of summary judgment: the work that Plaintiff alleges he was performing during that time for the two companies—acting as CFO of both IKON Development and IKON Construction, assisting both companies with bookkeeping, and particularly being involved in the scheme by IKON Development to buy and sell properties for profit.

The only question then, is whether the parties' failure to define the term "profits" or explain how profits under the contract would be calculated results in an unenforceable oral contract. In resolving this dispute, we find some guidance from the Tennessee Supreme Court's decision in ***Pharma Conference Education, Inc. v. State***, 703 S.W.3d 305 (Tenn. 2024).[11] In ***Pharma***, the State and a manufacturing company entered into a written contract providing that the company would produce as many pharmaceutical continuing education programs "as is feasible." *Id.* at 309. The State later terminated the agreement, and the company sued for breach of contract. In defense, the State argued that the contract was not valid because the promise to produce as many programs "as is feasible" was illusory. *Id.* at 310. The Claims Commission agreed and granted summary judgment in favor of the State. *Id.* at 310–11. This Court affirmed. *Id.* at 311.

The Tennessee Supreme Court disagreed. The question presented was whether the company's promise to produce as many programs "as is feasible" was illusory—that is,

---

[11] Although neither party cited ***Pharma*** in their briefs to this Court, it was filed prior to the commencement of briefing in this matter.

- 14 -

"too indefinite to be enforceable." *Id.* at 312 (citing *German v. Ford*, 300 S.W.3d 692, 704 (Tenn. Ct. App. 2009)). The court noted, however, that our courts generally attempt to avoid invalidating contracts on this basis. *Id.*; *see also* Tenn. Code Ann. § 47-50-103 ("All contracts in writing signed by the party to be bound, or the party's authorized agent and attorney, are prima facie evidence of a consideration."). Still, the State argued that where the contract did not identify any criteria for determining what was "feasible," the company had unfettered discretion and its promise was illusory. Specifically, the State noted that the contract did not define the term "feasible" nor did it "identify criteria" for determining what was feasible. *Pharma*, 703 S.W.3d at 314.

The court explained that "[i]f the State were right that the contract gives [the company] complete discretion to decide whether to produce programs, we would agree that the promise is illusory." *Id.* at 314. But the court held that the contract did not fail due to the lack of definition because the term "feasible" has a well-accepted meaning: capable of being accomplished. *Id.* (citing various dictionary definitions). Moreover, the court held that determining whether the programs could be made "turns on objective factors such as venue availability, speaker availability, and resource constraints." *Id.* A court would therefore be capable of determining whether the company breached its agreement "by looking to these and other objective criteria to determine how many programs [the company] could produce." *Id.* It was this objective standard that moved the contract out of the realm of the illusory. *Id.* at 315 ("Feasibility is determined by an objective standard, not [the company's] subjective determination.").

The court further rejected the State's argument "that the agreement's 'feasibility' standard is too indefinite to be enforceable." *Id.* The court conceded that "a requirement to produce as many programs 'as is feasible' is less definite than a requirement to produce a specific or minimum number of programs or to produce programs if certain specified conditions are satisfied." *Id.* Still, the court held that this term was definite enough to "meaningfully constrain" the company's discretion and "to enable a reviewing court to determine whether a breach has occurred." *Id.* According to the court, "[t]hat is all that is required." *Id.* (citing *Restatement (Second) of Contracts* § 33). Thus, the feasibility provision was held to be "sufficiently definite to constitute an enforceable promise." *Id.*

Obviously, there are some important distinctions between this case and *Pharma*, the foremost of which being that the written contract in that case was accompanied by a statutory presumption of consideration. *See id.* at 317 ("[T]he State has failed to rebut the statutory presumption of consideration that attaches to the written agreement[.]"). No such presumption exists in this case. But the guidance that the *Pharma* court provided as to whether indefiniteness of a term invalidates a contract is equally applicable here. Indeed, our high court relied on the same section of the *Restatement* that this Court has relied upon in considering alleged oral agreements for decades. Distilled to its essence, the *Pharma* court held that if the contract "meaningfully constrain[s]" a party's actions such that a reviewing court is able to determine whether a breach occurred using objective criteria, then the contract does not fail for indefiniteness.

- 15 -

Applying that reasoning here, we must conclude that Defendants have failed to demonstrate, for purposes of summary judgment, that the term "profits" is too indefinite to be enforceable. Certainly, the parties could have been more specific in their negotiations concerning how profits would be defined. However, Plaintiff specifically cited the parties' course of dealing with regard to the 2016 written contract as providing guidance as to how profits would be calculated in terms of bonuses, namely by subtracting "the profits needed to: maintain the companies bonding program, retain the required unlimited contractors licensing capabilities and any other funds deemed necessary to remain within the Company deemed necessary by [IKON Construction's accountant]." *See Pharma*, 703 S.W.3d at 316 (noting that courts construing contracts may consider "the parties' 'course of previous dealings'" (quoting *Kroger Co. v. Chem. Secs. Co.*, 526 S.W.2d 468, 471 (Tenn. 1975))). And indeed, it appears from the record that Plaintiff was paid profits from IKON Construction for a number of years; how those profits were calculated would likely be relevant evidence into how this promise to pay ten percent of the profits from both companies should be calculated.[12] Moreover, the term "profit" has a well-accepted meaning and is capable of being determined through objective means. *See* Profit, *Black's Law Dictionary* (9th ed. 2009) ("The excess revenues over expenditures in a business transaction."). Finally, while the parties may disagree as to the exact mathematical figure that is Defendants' profits for purposes of determining Plaintiffs' share under the alleged oral contract, it appears that Plaintiff was paid no bonus from either IKON Construction or IKON Development in 2021—assuming for purposes of summary judgment that Defendants indeed promised Plaintiff some bonus related to IKON Development, then a breach has clearly occurred and nothing more is required at this stage in the litigation.[13] *See Pharma*, 703 S.W.3d at 315; *see also Copeland*, 565 S.W.3d at 276 (requiring that we view the evidence in the nonmoving party's favor and draw all reasonable inferences in favor of that party). Under these circumstances, we conclude that Defendants have failed to demonstrate that the lack of precision as to the term "profits" renders the alleged oral contract so lacking in definiteness that it cannot be enforced as a matter of law. The trial court therefore erred in granting summary judgment to Defendants on this issue.[14]

### B. Promissory Estoppel

Plaintiff next contends that the trial court erred in granting summary judgment to Defendants on his promissory estoppel claim. "In order to succeed on a claim for promissory estoppel, plaintiffs must establish the following elements: '(1) that a promise

---

[12] How the trial court's sanctions order would affect this evidence is outside the scope of this appeal. Certainly, Defendants would not be prohibited from introducing such evidence in order to limit their exposure.

[13] Defendants did not assert, for purposes of summary judgment, that neither IKON Development nor IKON Construction made a profit during the relevant time frame under their chosen calculation or under any calculation.

[14] Again, the trial court dismissed Mr. LeFeve as a party after finding that he could not be held personally liable, and Plaintiff has not raised that ruling as an issue on appeal. As such, any claim for breach of contract exists only as to IKON Construction and IKON Development.

was made; (2) that the promise was unambiguous and not unenforceably vague; and (3) that they reasonably relied upon the promise to their detriment.'" ***Kinard v. Nationstar Mortg. LLC***, 572 S.W.3d 197, 210 (Tenn. Ct. App. 2018) (quoting ***Chavez v. Broadway Elec. Serv. Corp.***, 245 S.W.3d 398, 404 (Tenn. Ct. App. 2007)). The trial court found "for similar reasons to the Court's reasoning on the oral contract issue" that Plaintiff could not show that Defendants' alleged promise was definite enough to be enforced. Respectfully, we disagree. As discussed above, taking Plaintiff's proof in the light most favorable to him, he has presented evidence that Mr. LeFeve unconditionally promised him a bonus of ten percent of the profits of both IKON Construction and IKON Development for the services that he was providing to those companies, which bonus was to be paid at the conclusion of 2021. These statements are sufficient to survive summary judgment.

### C. Promissory Fraud

Plaintiff also asserts that the trial court erred when it granted summary judgment on his promissory fraud claim. In order to prevail on a claim for fraud, the plaintiff must demonstrate the following elements:

> (1) an intentional misrepresentation with regard to a material fact, (2) knowledge of the representation's falsity—that the representation was made knowingly or without belief in its truth, or recklessly without regard to its truth or falsity, (3) that the plaintiff reasonably relied on the misrepresentation and suffered damage, and (4) that the misrepresentation relates to an existing or past fact, or, if the claim is based on promissory fraud, then the misrepresentation must embody a promise of future action without the present intention to carry out the promise.

***Shahrdar v. Glob. Hous., Inc.***, 983 S.W.2d 230, 237 (Tenn. Ct. App. 1998) (brackets and quotation marks omitted) (quoting ***Stacks v. Saunders***, 812 S.W.2d 587, 592 (Tenn. Ct. App. 1990)). "Fraud is never presumed, and where it is alleged facts sustaining it must be clearly made out." ***Homestead Grp., LLC v. Bank of Tenn.***, 307 S.W.3d 746, 751 (Tenn. Ct. App. 2009). "While it is true that courts are reluctant to grant summary judgments to dispose of claims based upon fraud, a party asserting fraud, when confronted with a motion for summary judgment must produce some competent and material evidence to support his claim." ***Price v. Mercury Supply Co.***, 682 S.W.2d 924, 934 (Tenn. Ct. App. 1984) (citing ***Fowler v. Happy Goodman Fam.***, 575 S.W.2d 496, 498 (Tenn. 1978)).

The trial court's ruling with regard to this claim was two-fold. First, the trial court held that any alleged promise to Plaintiff was too indefinite to sustain a claim for fraud. Again, we disagree with the trial court that the alleged promise lacks the definiteness to be enforced.

Second, however, the trial court concluded that Plaintiff failed to demonstrate that Mr. LeFeve made the promise without the present intention to carry it out. On appeal, Plaintiff asserts that Mr. LeFeve's evasiveness after the sale of the Property in November 2021 and after Plaintiff asked for payment supports an inference of fraudulent intent under

- 17 -

*American Cable Corporation v. ACI Management, Inc.*, No. M1997-00280-COA-R3-CV, 2000 WL 1291265 (Tenn. Ct. App. Sept. 14, 2000). In that case, we explained how conduct may be used to prove intent:

> As in other cases where intent is an issue, a party may prove an intent to defraud using conduct or other circumstantial evidence. *Metropolitan Life Ins. Co. v. Hedgepath*, 182 Tenn. 296, 300, 185 S.W.2d 906, 907 (1945). However, proving fraudulent intent, like pleading fraud, is particularly demanding. Outside of cases involving fiduciary relationships, fraud can never be presumed. *In re Ashley*, 5 B.R. 262, 266 (Bankr. E.D. Tenn. 1980); *Snapp v. Moore*, 2 Tenn. (2 Overt.) 236, 239 (1814); *Hiller v. Hailey*, 915 S.W.2d 800, 803 (Tenn. Ct. App. 1995). This rule is part of the law's larger, overarching view that where the same set of circumstances can give rise to opposite inferences, the law presumes innocent acts rather than intentional misconduct. *Memphis Cotton Press & Storage Co. v. Hanson*, 4 Tenn. App. 293, 301 (1926). Thus, no inference of fraud should be made from circumstances that equally permit reasonable inferences of non-fraudulent conduct. *In re Homer*, 45 B.R. 15, 22 (Bankr. W.D. Mo. 1984).

> Failure to perform a promise, standing alone, is not competent evidence that the promisor never intended to perform. *World Help v. Leisure Lifestyles, Inc.*, 977 S.W.2d 662, 670 (Tex. Ct. App. 1998). In the context of a promissory fraud claim, the mere fact that the promisor failed to perform the promised act is insufficient by itself to prove fraudulent intent. *Bryant v. Southern Energy Homes, Inc.*, 682 So. 2d 3, 5 (Ala. 1996) (affirming summary judgment); *see also In re Emery*, 52 B.R. 68, 70 (Bankr. E.D. Pa. 1985). The reason is that ordinarily, where nothing else is shown, mere failure to perform a promise can be as consistent with an honest intent as with a dishonest one. *Murphy v. T.B. O'Toole, Inc.*, 87 A.2d 637, 638 (Del. Super. Ct. 1952). Not every broken promise starts with a lie.

*Am. Cable Corp.*, 2000 WL 1291265, at *4–5. In *American Cable Corporation*, the plaintiff's promissory fraud claim failed because the only proof of intent was that a promise was made that was later not kept. We held, however, that this proof was insufficient to support an inference that the defendant never intended to keep his promise. *Id.* Indeed, we have held that "'[t]he promisor's intention must be shown to 'be false by evidence other than subsequent failure to keep the promise or subjective surmise or impression of promisee.'" *Huddleston v. Harper*, No. E2014-01174-COA-R3-CV, 2015 WL 3964791, at *9 (Tenn. Ct. App. June 30, 2015) (quoting *Hood Land Tr. v. Hastings*, No. M2009-02625-COA-R3-CV, 2010 WL 3928647, at *7 (Tenn. Ct. App. Oct. 5, 2010)).

In this case, we conclude that the trial court did not err in granting summary judgment on this claim. "In the context of promissory fraud, '[t]he question of intent is a question of fact for the finder of fact.'" *Id.* (quoting *Dog House Invs., LLC v. Teal Props., Inc.*, 448 S.W.3d 905, 916 (Tenn. Ct. App. 2014)). While questions of fact are typically

left to the fact-finder, they may be decided at the summary judgment stage if the facts are undisputed and "the facts and the inferences drawn reasonably from the facts permit reasonable persons to draw only one conclusion." *Rains v. Bend of the River*, 124 S.W.3d 580, 588 (Tenn. Ct. App. 2003). Indeed, this Court has explained in the context of promissory fraud as follows:

> [W]here a claim of fraud is presented, ordinarily only upon a full trial of the action can the issue properly be developed. As a general rule, summary judgment is not an appropriate procedure for the disposition of such an issue.
>
> Nevertheless, it is incumbent upon the party asserting fraud, when confronted by a motion for summary judgment, to produce some competent and material evidence legally sufficient to support his claim or defense.

*Fowler v. Happy Goodman Fam.*, 575 S.W.2d 496, 499 (Tenn. 1978). In the absence of such proof, summary judgment is appropriate. *See id.*

According to Plaintiff's sworn interrogatory responses, Mr. LeFeve began making his alleged oral promises to pay Plaintiff a ten percent bonus as early as June 2021. Plaintiff, however, points to no evidence about Mr. LeFeve's conduct during that time from which an inference could be drawn that he did not intend to keep his alleged oral promises. Instead, Plaintiff's proof all focuses on Mr. LeFeve's conduct around November 2021, *after* the sale of the Property and *after* Plaintiff asked for the allegedly promised compensation. Simply put, proof that Mr. LeFeve acted suspiciously when it came time to perform his alleged oral promise is not evidence that Defendants never intended to keep Mr. LeFeve's promise at the time the promise was allegedly made. Instead, it would be nothing more than speculation to conclude that this later "ghosting" was evidence that Defendants never intended to pay Plaintiff the ten percent bonus when the promise was allegedly made. *See Rye*, 477 S.W.3d at 265 (holding that the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts" in order to survive summary judgment). Indeed, it is equally as likely that Mr. LeFeve's alleged conduct in November 2021 indicates that Defendants changed their mind about paying the alleged bonus after the promise was made; while this scenario may constitute a breach of contract, it is insufficient to constitute promissory fraud. *See Am. Cable Corp.*, 2000 WL 1291265, at *4–5 (holding that no inference of fraud can be made when the circumstances equally imply non-fraudulent conduct). Thus, Defendants have successfully demonstrated that Plaintiff's proof "is insufficient to establish [his] claim" for promissory fraud. *Id.* at 264. The trial court did not err in granting summary judgment as to this claim.

### D. Quantum Meruit

The next claim at issue is for quantum meruit. "A quantum meruit action is an equitable substitute for a contract claim pursuant to which a party may recover the reasonable value of goods and services provided to another[.]" *Swafford v. Harris*, 967 S.W.2d 319, 324 (Tenn. 1998). This quasi-contract action is sometimes referred to as an action for unjust enrichment. *See Paschall's, Inc. v. Dozier*, 407 S.W.2d 150, 154 (Tenn.

1966) ("Actions brought upon theories of unjust enrichment, quasi contract, contracts implied in law, and quantum meruit are essentially the same."). In order to prevail on a claim for quantum meruit, Plaintiff is required to prove the following elements:

(1) there must be no existing, enforceable contract between the parties covering the same subject matter,

(2) the party seeking recovery must prove that it provided valuable goods and services,

(3) the party to be charged must have received the goods and services,

(4) the circumstances must indicate that the parties involved in the transaction should have reasonably understood that the person providing the goods or services expected to be compensated, and

(5) the circumstances must also demonstrate that it would be unjust for the party benefitting from the goods or services to retain them without paying for them.

***ICG Link, Inc. v. Steen***, 363 S.W.3d 533, 546 (Tenn. Ct. App. 2011) (quoting ***Forrest Constr. Co., LLC v. Laughlin***, 337 S.W.3d 211, 227 (Tenn. Ct. App. 2009)).

"The measure of damages for a quantum meruit claim is the actual value of the services provided." ***In re Est. of Marks***, 187 S.W.3d 21, 32 (Tenn. Ct. App. 2005) (citing ***Mitch Grissim & Assocs. v. Blue Cross Blue Shield of Tenn.***, 114 S.W.3d 531, 537 (Tenn. Ct. App. 2002)). The party seeking to recover under a quantum meruit theory must therefore "present some proof regarding the reasonable value of the services rendered." ***Id.*** (citing ***CPB Mgmt., Inc. v. Everly***, 939 S.W.2d 78, 81 (Tenn. Ct. App. 1996)). Proof of the value of services "can be provided by the plaintiff him or herself, and it may be provided from other professionals in the same trade or business" and "should be based on the customs and practices prevailing in the same sort of business in which the services would normally be provided." ***Id.***

The trial court concluded that Plaintiff's claim under a quantum meruit theory fails because he presented no evidence of the reasonable value of the services that he provided. On appeal, Plaintiff does not appear to dispute the trial court's conclusion but instead asserts that Defendants failed to present any evidence in support of their defense of this claim in their statement of undisputed material facts. As such, Plaintiff contends that this issue was not "'teed up' for summary judgment disposition to begin with."

We respectfully disagree. Here, Defendants' memorandum in support of their motion for summary judgment, filed contemporaneously with their motion, specifically asserts that Plaintiff's claim for recovery under a quantum meruit theory fails because "there is no proof in the record of the reasonable value of the services he claims he provided." They further asserted that Plaintiff would be required to establish the value via expert proof. Plaintiff responded to this argument in his response to the motion for

- 20 -

summary judgment. Thus, this issue was clearly raised in Defendants' motion for summary judgment. Moreover, because Defendants were asserting that Plaintiff's proof was lacking, it is unclear why any statements of undisputed fact were required for Defendants to "tee up" this issue. *Cf. Kokko v. Moore*, No. M2024-00898-COA-R3-CV, 2025 WL 2953694, at *10 (Tenn. Ct. App. Oct. 20, 2025) ("[T]rial courts are not limited to the statements of material facts when determining whether a genuine issue of material fact exists.").

The record supports the trial court's conclusion that Plaintiff failed to present proof at the summary judgment stage to establish the reasonable value of the services he allegedly provided to Defendants. Certainly, Plaintiff's brief points to no proof in the record to establish that value, expert or otherwise. And while Plaintiff argued in the trial court that he had not yet disclosed any expert witnesses, nothing in the record indicates that Plaintiff submitted an affidavit seeking additional discovery on this issue. *See Cardiac Anesthesia Servs., PLLC v. Jones*, 385 S.W.3d 530, 536 (Tenn. Ct. App. 2012) (noting that one way to respond to a motion for summary judgment is to submit "an affidavit explaining the necessity for further discovery pursuant to Tenn. R. Civ. P. 56.06" (quoting *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 84 (Tenn. 2008))). Moreover, it is likely that such a request would have been futile given the trial court's order preventing Plaintiff from submitting any additional proof beyond his prior discovery responses. In the absence of any proof to establish the value of his services, the trial court did not err in granting summary judgment to Defendants on Plaintiff's quantum meruit claim.[15]

### E. Real Estate Broker's License

Plaintiff's final issue concerns the trial court's determination that to the extent that his damages claimed ten percent of the profits from the sale of the Property, the claim is barred by Plaintiff's failure to hold a real estate license. Defendants assert that the trial court not only correctly granted summary judgment as to this issue, but should have granted their motion to dismiss on this basis, entitling them to attorney's fees under Tennessee Code Annotated section 20-12-119.

The Tennessee General Assembly enacted the Tennessee Real Estate Broker License Act of 1973 ("the Act") in order "to protect the public from irresponsible or unscrupulous persons dealing in real estate." *Bus. Brokerage Ctr. v. Dixon*, 874 S.W.2d 1, 3 (Tenn. 1994) (citing *Prowell v. Parks*, 767 S.W.2d 633, 634 (Tenn. 1989)). Although the Act is drafted broadly, the Act is not to be applied in a "bright-line approach" that ignores its purpose to protect the public from unfair and deceptive practices. *Id.* at 3, 5 (concluding that while the "literal language" could be interpreted to prohibit all sales of business entities in which even a minor part of the sale includes real property, such a result "must [be] reject[ed]" where the "results are not consonant with the legislative intent under the Act").

---

[15] We note that Defendants also asserted that Plaintiff's claim for quantum meruit recovery could not stand where the parties had a bonus agreement pursuant to the 2016 written contract. That argument is pretermitted by our decision.

Relevant to this appeal, the Act provides as follows:

No action or suit shall be instituted, nor recovery be had by any person, in any court of this state for compensation for any act done or service rendered, the doing or rendering of which is prohibited under this chapter to other than by licensed brokers, affiliate brokers or time-share salespersons, unless the person was duly licensed under this chapter as a broker, affiliate broker or time-share salesperson at the time of performing or offering to perform any such act or service or procuring any promise or contract or the payment of compensation for any such contemplated act or service.

Tenn. Code Ann. § 62-13-105. The statute defines the terms "broker" as follows:

(4)(A) "Broker" means any person who, for a fee, commission, finders fee or any other valuable consideration or with the intent or expectation of receiving a fee, commission, finders fee or any other valuable consideration from another, solicits, negotiates or attempts to solicit or negotiate the listing, sale, purchase, exchange, lease or option to buy, sell, rent or exchange for any real estate or of the improvements on the real estate or any time-share interval as defined in the Tennessee Time-Share Act, compiled in title 66, chapter 32, part 1, collects rents or attempts to collect rents, auctions or offers to auction or who advertises or holds out as engaged in any of the foregoing;

(B) "Broker" also includes any person employed by or on behalf of the owner or owners of lots or other parcels of real estate, at a salary, fee, commission or any other valuable consideration, to sell the real estate or any part of the real estate, in lots or parcels or other disposition of the real estate. It also includes any person who engages in the business of charging an advance fee or contracting for collection of a fee in connection with any contract whereby the person undertakes primarily to promote the sale of real estate either through its listing in a publication issued primarily for that purpose or for referral of information concerning the real estate to brokers, or both[.]

Tenn. Code Ann. § 62-13-102. And even a single act where a non-licensed person operates as a broker is prohibited by the Act:

(a) Any person who, directly or indirectly for another, with the intention or upon the promise of receiving any valuable consideration, offers, attempts or agrees to perform or performs any single act defined in § 62-13-102, whether as a part of a transaction or as an entire transaction, is deemed a broker, affiliate broker or time-share salesperson within the meaning of this chapter.

(b) The commission of a single such act by a person required to be licensed under this chapter and not so licensed constitutes a violation of this chapter.

Tenn. Code Ann. § 62-13-103.

The trial court granted summary judgment on this defense, ruling that Plaintiff's own sworn interrogatory responses established that he performed acts regulated by the Act in selling the Property, particularly when he claimed to "be the one showing the building to potential buyers when Mr. LeFeve was not available to be there." Citing ***Bowden Building Corporation v. Tennessee Real Estate Commission***, 15 S.W.3d 434 (Tenn. Ct. App. 1999), the trial court held that Plaintiff was acting as a broker as governed by the Act and was not entitled to any share of the proceeds from the sale of the Property. ***Id.*** at 440 ("Any other person, *including an employee or other agent of the owner*, who lists or sells that property, however, qualifies as a broker if he or she receives or expects to receive any valuable consideration that is associated with their efforts in soliciting or negotiating the listing, sale, or purchase of the real estate." (emphasis added)).

It is undisputed that Plaintiff did not hold a real estate broker's license during the events at issue in this case. Defendants therefore assert that any claim to a portion of the sales proceeds on account of work that Plaintiff allegedly did to sell the Property is barred by the Act. Defendants did not, however, include any specific facts in their own statement of undisputed facts concerning the work that Plaintiff performed related to the sale of the Property. Instead, Defendants relied on Plaintiff's own sworn interrogatory responses. Plaintiff asserted in the trial court, however, that these responses did not demonstrate that he performed actions prohibited by the Act. The most relevant sworn interrogatory response is as follows:

> I had multiple meetings with [Mr.] LeFeve in which I gave him advice regarding pricing for the building, regarding whether an offer should be accepted, and regarding logistical details relating to the selling of the building. These would be one on one meetings in Mr. LeFeve's office, going over the details of the contract sale and sales price, rental back amounts, duration of the time frame to rent back and if there [was] anything else I had concerns with. Our discussions also included dealing with the specifics of moving out of the building and with rental of the building after the closing on the sale. Mr. LeFeve also had me to discuss and relay ideas and responses about the contracts with . . . the real estate broker that was communicating with the buyer. Also, I would be the one showing the building to potential buyers when Mr. LeFeve was not available to be there. I also had email communications with Mr. LeFeve where he would forward me the offer contract and ask me to review and make notes as to what I agreed with and what I didn't agree with . . . . I convinced Mr. LeFeve not to take the first offer presented as I said it was too low. Then about 5–6 months later, the same buyer carne back with an offer that was over $600,000 more than the first one.

Thus, Plaintiff's proof indicates that his efforts to sell the Property involved primarily internal discussions with Mr. LeFeve and the real estate broker retained by IKON

Development, except one or more instances in which Plaintiff acted as a substitute for Mr. LeFeve in showing the Property to buyers.

Clearly, the Act requires that only a broker may act to "solicit or negotiate the listing, sale, [or] purchase . . . for any real estate[.]" Tenn. Code Ann. § 62-13-102(4)(A). The Act does not, however, specifically define the terms "solicit" or "negotiate." Neither did the trial court attempt to define these terms. Generally, "solicitation" refers to the act "of requesting or seeking to obtain something" or "[a]n attempt or effort to gain business." *Black's Law Dictionary* (9th ed. 2009). To "negotiate" generally means "[t]o communicate with another party for purpose of reaching an understanding" or "[t]o bring about discussion or bargaining[.]" *Id.*

Certainly, the bulk of Plaintiff's involvement with the sale of the Property involved internal discussions among corporate agents associated with IKON Development and IKON Construction. These discussions do not appear to have involved any direct negotiations with purchasers or solicitation to outsiders such that the need to protect the public from unscrupulous practices is implicated. *See **Bus. Brokerage Ctr.***, 874 S.W.2d at 3. As such, it appears that reasonable minds could disagree as to whether these actions constitute solicitation or negotiation under the Act.

The trial court was correct, however, when it noted that Plaintiff admitted that he was present for one or more instances in which potential buyers viewed the Property. Viewing this evidence in the light most favorable to Plaintiff, however, it is entirely unclear whether Plaintiff was present only in order to give the buyers and/or brokers physical access to the Property, or whether he engaged in any solicitation or negotiation of any type during these instances. If Plaintiff engaged in even a single act of negotiation or solicitation during these meetings, Defendants have a strong argument that the Act could apply. *See* Tenn. Code Ann. § 62-13-103(b). On the other hand, if Plaintiff was merely present during these instances and did not actually engage in any solicitation or negotiation, it is arguable that the Act should not be interpreted as prohibiting Plaintiff's actions. *See **Bus. Brokerage Ctr.***, 874 S.W.2d at 3. As a result, we conclude that there is uncertainty as to whether the undisputed facts demonstrate that Plaintiff in fact engaged in either negotiation or solicitation as required under the Act. *See **Baumgardner v. ACD Tridon N. Am., Inc.***, No. 01-A-01-9806-CV00307, 1998 WL 652575, at *2 (Tenn. Ct. App. Sept. 23, 1998) (holding that "if reasonable minds might differ or there is uncertainty as to whether or not reasonable minds might differ as to material facts" summary judgment is not appropriate (citing ***Evco Corp. v. Ross***, 528 S.W.2d 20, 25 (Tenn. 1975))).

Moreover, although not specifically cited by Plaintiff, we note that he argued in the trial court and on appeal that he acted only as an officer of IKON Construction and IKON Development in his efforts to sell the Property. This argument clearly implicates a statutory exemption from the Act that was discussed in ***Bowden Building***. *Cf. **Kocher v. Bearden***, 546 S.W.3d 78, 85 n.8 (Tenn. Ct. App. 2017) ("It is the duty of this Court to apply the controlling law, for which there is a basis in the record, whether or not cited or relied upon by the parties." (quoting ***Coffee v. Peterbilt of Nashville, Inc.***, 795 S.W.2d 656, 658 n.1

(Tenn. 1990))). Specifically, Tennessee Code Annotated section 62-13-104(a)(1) provides as follows:

This chapter does not apply to:

. . . .

(F) A corporation, foreign or domestic, acting through an officer duly authorized to engage in a real estate transaction, where the transaction occurs as an incident to the management, lease, sale or other disposition of real estate owned by the corporation; however, this exemption does not apply to a person who performs an act described in § 62-13-102(4)(A), either as a vocation or for compensation, if the amount of the compensation is dependent upon, or directly related to, the value of the real estate with respect to which the act is performed.

In his sworn interrogatory responses, Plaintiff claimed that he was treated as the CFO of both IKON Development and IKON Construction. Moreover, there does not appear to be any proof that Plaintiff acted as a real estate broker as a vocation. The trial court, however, did not address this portion of the Act or determine whether Plaintiff's claim for a portion of the *profits* of IKON Development amounted to a claim for compensation that is "dependent upon[] or directly related to" the *value* of the Property. Without addressing this exemption, it appears that the grant of summary judgment on this defense was premature. Based on all of the foregoing, we conclude that summary judgment was inappropriate as to this defense.

Defendants assert, however, that the trial court erred when it denied their motion to dismiss on this basis. They therefore argue that they are entitled to attorney's fees under Tennessee Code Annotated section 20-12-119(c) (providing for an award of costs and attorney's fees to the prevailing party when a court grants a motion to dismiss for failure to state a claim upon which relief may be granted). As the Tennessee Supreme Court has explained,

In considering a motion to dismiss, courts must construe the complaint liberally, presuming all factual allegations to be true and giving the plaintiff the benefit of all reasonable inferences. A trial court should grant a motion to dismiss only when it appears that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief. We review the trial court's legal conclusions regarding the adequacy of the complaint de novo.

*Webb v. Nashville Area Habitat for Human., Inc.*, 346 S.W.3d 422, 426 (Tenn. 2011) (quotation marks and citations omitted).

As an initial matter, we note that the only motion to dismiss filed in this case was filed against Plaintiff's original complaint. The trial court, however, permitted Plaintiff to

file an amended complaint. Defendants did not appeal the allowance of the amended complaint, nor did they renew their motion to dismiss following the filing of the amended complaint. "An 'amended complaint' supersedes the original complaint, rendering it of no legal effect." ***Stephens v. Home Depot U.S.A., Inc.***, 529 S.W.3d 63, 70 n.4 (Tenn. Ct. App. 2016) (citing ***Christian v. Lapidus***, 833 S.W.2d 71, 73 n.2 (Tenn. 1992)). Given that no motion to dismiss was filed against the operative complaint, it is unclear whether this issue is even properly before this Court.

In an abundance of caution, however, we have reviewed the operative complaint and conclude that Defendants' motion to dismiss was properly denied. *See* Tenn. Code Ann. § 20-12-119(c)(5) (providing that the attorney's fees provision does not apply to "[a]ny claim that the party against whom the motion to dismiss was filed . . . in good faith amended [within certain deadlines] to state a claim upon which relief may be granted"). Plaintiff's amended complaint details his allegations concerning the efforts he made toward the sale of the Property. These allegations all concerned intraoffice conversations and analysis regarding the sale of the Property and specifically asserted that all solicitation and negotiation were performed by the retained real estate broker.[16] As such, Defendants failed to demonstrate that Plaintiff can prove no set of facts in which his claims for a portion of IKON Development's profits are not barred by the Act. The trial court therefore did not err in denying Defendants' motion to dismiss, and Defendants are not entitled to their attorney's fees related to that motion.

### F. Frivolous Appeal Damages

Finally, Defendants assert that they should be awarded their attorney's fees incurred in defending a frivolous appeal under Tennessee Code Annotated section 27-1-122, which provides as follows:

> When it appears to any reviewing court that the appeal from any court of record was frivolous or taken solely for delay, the court may, either upon motion of a party or of its own motion, award just damages against the appellant, which may include, but need not be limited to, costs, interest on the judgment, and expenses incurred by the appellee as a result of the appeal.

---

[16] Specifically, the amended complaint alleged as follows:

47. [Plaintiff] was not involved in the solicitation of purchasers for the Property as that was handled by the real estate broker or agent.
48. [Plaintiff] was not involved in the advertising of the Property for sale as that was handled by the real estate broker or agent.
49. [Plaintiff] did not negotiate with the purchaser or potential purchasers of the Property or their real estate agents as that was handled [by] IKON Development's real estate broker or agent.

Plaintiff was partially successful in this appeal; therefore, it was not frivolous. As such, Defendants are not entitled to damages under section 27-1-122.

## V. CONCLUSION

The judgment of the trial court is affirmed in part, reversed in part, and remanded for further proceedings consistent with this Opinion. Costs of this appeal are taxed one-half to Appellant, Stephen Johnson, and one-half to Appellees, IKON Development, LLC and IKON Construction, Inc., for all of which execution may issue if necessary.

s/ J. Steven Stafford
J. STEVEN STAFFORD, JUDGE